John D. ARCHER and Ashley Creek
Phosphate Company, Plaintiffs
and Appellants,

v.

BOARD OF STATE LANDS AND FOR-
ESTRY, State of Utah; Director, Divi-
sion of State Lands and Forestry, State
of Utah, Defendants and Appellees.

No. 940214.

Supreme Court of Utah.

Oct. 11, 1995.

E. Craig Smay, Salt Lake City, for plaintiffs.

Jan Graham, Att'y Gen., Steven F. Alder, Asst. Att'y Gen., Salt Lake City, for defendants.

Peter Watson Billings, Jr., Denise A. Dragoo, Brock R. Belnap, Salt Lake City, for intervenor FS Industries.

Leonard John Lewis, Thomas W. Clawson, Salt Lake City, for intervenor Chevron Pipeline Company.

DURHAM, Justice:

This is an appeal from a summary judgment by the district court upholding an order of the Board of State Lands and Forestry. We affirm.

On May 28, 1985, the Division of State Lands and Forestry (the Division) granted Chevron Pipeline Company (Chevron) an easement across state school trust lands. The purpose of the easement was to allow Chevron to build a pipeline to carry slurried phosphate from Vernal, Utah, to Rock Springs, Wyoming. In 1985, the Utah Public Service Commission prohibited the transportation of phosphate by truck, requiring instead that phosphate be transported by slurry pipeline.

Chevron knew that the pipeline was to be operated as a common carrier subject to regulation by the Interstate Commerce Commission (ICC). However, in 1986, Chevron commenced exclusive operation of the pipeline despite plaintiff Ashley Creek Phosphate's (ACP) objection that Chevron had not published a tariff, as required by the Interstate Commerce Act. In 1989, Chevron complied with an ICC order requiring it to publish rates for shipment on the pipeline. Later that same year, ACP, the lessee of Utah school trust lands, and the State brought actions against Chevron, challenging the reasonableness of the pipeline rates and alleging antitrust violations. The antitrust suit has been suspended while the ICC determines whether the Chevron tariff is reasonable.

In 1992, Chevron sought approval from the Division to assign its easement to FS Industries. ACP asked the Division not to approve the assignment and further asked the Division to terminate Chevron's easement across state lands on the basis of Chevron's failure to publish a tariff. Upon receiving the request to terminate the easement, the Division met with the parties and decided to approve the assignment rather than terminate the easement. In response, ACP filed a petition for consistency review with the Board of State Lands and Forestry (the Board). After an informal hearing, the Board affirmed the Division's decision. ACP then filed an action in Utah's Third District Court for a trial de novo. FS Industries and Chevron filed motions to intervene, which were granted. The district court upheld the Board's order and entered summary judgment against ACP. ACP now appeals, raising the following issues: (1) whether ACP lacks standing to challenge the district court's decision approving the assignment of the easement to FS Industries; (2) whether the district court correctly concluded that termination of the easement was not mandatory but was within the discretion of the Division's Director; and (3) whether the district court considered the best interests of the school trust lands in its decision not to terminate the easement and to approve the assignment to FS Industries.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County,* 855 P.2d 231, 235 (Utah 1993). On appeal from summary judgment, we accord the trial court's legal conclusions no deference but review them for correctness. *Malone v. Parker,* 826 P.2d 132, 133 (Utah 1992); *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1040 (Utah 1991). When reviewing the facts supporting the order, we view them in a light most favorable to the party opposing the motion. *Baldwin v. Burton,* 850 P.2d 1188, 1192 (Utah 1993). Because this case is a review of an administrative adjudicative proceeding, we must ensure that the district court complied with the requirements of the Utah Administrative Procedures Act (UAPA). *See* Utah Code Ann. § 78–3–4(5).

Under UAPA, "[t]he district courts shall have jurisdiction to review by trial de novo all final agency actions resulting from informal adjudicative proceedings." Utah Code Ann. § 63–46b–15(1)(a). This section requires that the district court's review of informal adjudicative proceedings be performed by holding a new trial rather than by reviewing the informal record. *Cordova v. Blackstock,* 861 P.2d 449, 451 (Utah Ct.App. 1993). The State argues that where the governing statute grants discretion to an administrative agency, the standard of review in a trial de novo of an informal administrative proceeding should be limited to determining whether the agency's decision was reasonable in view of the facts presented at the district court. In other words, the State argues that the district court's de novo review of an informal proceeding should defer to the reasonable exercise of statutorily delegated discretion to the Division. We disagree.

Instead, we note with approval and adopt the rule previously used in two decisions from the Utah Court of Appeals establishing the right to a new trial without deference to the determinations of an informal administrative proceeding. *Id.* at 452

("[D]istrict court does not have discretion to review an informal adjudicative proceeding by any method other than a trial de novo, as mandated by UAPA."); *Brinkerhoff v. Schwendiman,* 790 P.2d 587, 590 (Utah Ct. App.1990) (finding absolute right to trial de novo when informal hearing is held under UAPA). This rule guarantees the district court the opportunity to correct any deficiencies that may arise because of the informal nature of administrative proceedings and provides an adequate record for future review. *Cordova,* 861 P.2d at 452; *see also Southern Utah Wilderness Alliance v. Board of State Lands & Forestry,* 830 P.2d 233, 236 (Utah 1992) (finding that formal administrative proceedings "allow the opportunity for fuller discovery and fact finding, [and] are more likely to result in an adequate record"). Thus, pursuant to section 63–46b–15(1)(a), review by trial de novo means a new trial with no deference to the administrative proceedings below. Accordingly, we examine, without deference, the district court's legal conclusions and determine whether, on de novo review, the district court properly granted summary judgment. *See East Jordan Irrigation Co. v. Morgan,* 860 P.2d 310, 312 (Utah 1993); *Ferree v. State,* 784 P.2d 149, 151 (Utah 1989).

## STANDING

 FS Industries argues that ACP lacks standing to challenge the Director's decision. When determining questions of standing, we rely on the factors articulated in *Jenkins v. Swan,* 675 P.2d 1145, 1150–51 (Utah 1983). *Jenkins* requires that a party seeking standing demonstrate only one of the following: (1) a personal stake in the controversy and some causal relationship between the injury, the governmental actions, and the relief requested; (2) that no other party has a greater interest in the outcome of the case and the issues are unlikely to be raised at all unless the present party has standing to raise them; or (3) that the issues are of such great public importance that they ought to be decided in furtherance of the public interest. *Id.*

In this case, ACP has standing under the first *Jenkins* criterion. As the lessee of state school trust lands, ACP owns the right to use the easement through its access to Chevron's common carrier pipeline. Effective denial of this right would cause ACP to suffer direct injury because the pipeline represents the only legal method available to ACP for transporting phosphate to commercial markets. Therefore, ACP has standing.

## TERMINATION OF THE EASEMENT

 ACP argues that termination of the easement was mandatory because Chevron did not immediately publish a tariff upon commencing operation of the pipeline in 1986. However, even assuming that Chevron's failure to publish a tariff in 1986 is a violation of the law, rule 640–40–1700 of the Utah Administrative Code vests discretion in the Director of the Division to determine whether the violation justifies termination. This rule states:

Any easement granted by the Division across state land *may be terminated* in whole or in part for failure to comply with any term or conditions of the conveyance document or applicable laws or rules. *Upon determination by the Director* that an easement is subject to termination pursuant to the terms of the grant or applicable laws or rules, the Director shall issue an appropriate instrument terminating the easement.

Utah Admin.Code R640–40–1700 (emphasis added). Statutes and administrative rules should generally be construed according to their plain language. *See Brinkerhoff v. Forsyth,* 779 P.2d 685, 686 (Utah 1989). Thus, in reviewing a statute or an administrative rule, we read each term literally unless such a reading is unreasonably inoperable or confused. *See Morton Int'l Inc. v. Auditing Div.,* 814 P.2d 581, 590 (Utah 1991).

The language of this rule is not ambiguous. The rule clearly states that the Director *may,* not shall, terminate the easement for violations of the law. ACP ignores the first sentence of the rule, focusing instead on the second half of the second sentence, which states that "the Director shall issue an appropriate instrument terminating the easement." ACP argues that this part of the second sentence absolutely requires the Di-

rector to terminate the easement for any violation of the law. However, the rule predicates this result on the Director's "determination" that the easement is terminable. If the Director had no discretion, the need for a "determination" would be surplusage. Thus, the plain language of the rule grants discretion to the Director to determine whether a violation of the law warrants termination of the easement.

In addition, we note that this construction of the rule is consistent with good policy and common sense. A requirement that the Director automatically terminate an easement for every violation of federal, state, or local law, ordinance, or regulation would create an administrative nightmare. Under ACP's interpretation, even the most minor and isolated violation would require mandatory termination. ACP attempts to address this problem by arguing that after mandatory termination, reinstatement of an easement would be possible if reinstatement were shown to be in the best interests of the trust. Such a process would be cumbersome and wasteful and does not seem a plausible construction of the rule. If the Director deems a violation serious, the Director can terminate the easement under the discretion granted in rule 640–40–1700. But if the Director deems a violation to be minor or cured, the Director can exercise discretion not to terminate the easement. Allowing the Director the discretion not to terminate the easement for minor or even cured violations ensures that the Director can act in the best interests of the trust.

In this case, although Chevron's failure to publish a tariff in 1986 was arguably a violation of the law, Chevron complied with a subsequent FCC order to publish rates in 1989. There is nothing in the record which indicates that ACP had operational capacity to ship or even mine phosphate in 1989, let alone in 1986. Thus, the alleged violation appears to have caused little, if any, injury, and a discretionary response from the Director seems entirely appropriate. There-

fore, this Court finds that the district court correctly concluded that rule 640–40–1700 grants the Director the discretion to determine whether a violation warrants termination of the easement. We note, however, that rule 640–40–1700 does not grant the Director unfettered discretion to terminate the easement, because the Director is always bound to act in the best interests of the trust. *See Consolidation Coal Co. v. Utah Div. of State Lands & Forestry,* 886 P.2d 514, 525 (Utah 1994) (finding that the state has "irrevocable duty to manage these trust lands for the sole benefit of the common schools").

## THE BEST INTERESTS OF THE TRUST

An examination of the district court's findings of fact and conclusions of law establishes that on de novo review the court considered the best interests of the trust and correctly concluded not to terminate the easement. In exercising discretion to terminate the easement, the Director is bound to act in the best interests of the trust beneficiaries. *See National Parks & Conservation Assoc. v. Board of State Lands,* 869 P.2d 909, 916 (Utah 1993) (finding that trustee's duty of loyalty requires state to act solely for benefit of trust). The Director must

(a) seek to maximize trust land revenue, consistent with the balancing of short and long-term interests so that long-term benefits are not lost in an effort to maximize short-term gains;

(b) maintain integrity of the trust and prevent misapplication of its lands and revenues through prudent management; and

(c) make the interest of the school and institutional trust beneficiaries paramount.

Utah Code Ann. § 65A–1–4(2).[1]

In sum, in keeping the interests of the trust paramount, the Division must manage state school trust lands in the "most prudent and profitable manner possible."

---

1. Effective July 1, 1994, the State Lands Act, Utah Code Ann. §§ 65A–1–1 to –10 (Supp.1995), and the School and Institutional Trust Lands Management Act, Utah Code Ann. §§ 53C–1–101 to –306 (Supp.1995), were amended in part to place management authority for school and institutional trust land assets under the provisions of the School and Institutional Trust Lands Management Act.

*Colman v. Utah State Land Bd.*, 17 Utah 2d 14, 403 P.2d 781, 783 (1965).

ACP argues that the district court failed to consider the best interests of the trust in concluding not to terminate the easement. However, the record shows that even though the district court may not have specifically enumerated the interests of the trust, it did consider the trust's best interests in deciding not to terminate the easement. The court's findings of fact and conclusions of law demonstrate a recognition that trust lands were involved and an understanding of the nature of the fiduciary obligations involved. The court stated in its findings of fact that "the Director had exercised his discretion in a manner consistent with the rules, and statutes and that the decision was consistent with the best interests of the trust beneficiaries." The court also stated in its conclusions of law that in exercising trust duties, the State must maximize trust land revenue in a manner "that would serve the best interest of the beneficiaries within the provisions of applicable law."

The district court correctly concluded that termination of the easement before the ICC has adjudicated the reasonableness of the tariff would not benefit the school trust lands. ACP, however, argues that terminating the easement will benefit the trust and posits the following reasoning: More money is in the best interests of the trust; the trust is not acquiring more money because ACP's mine is not operating; ACP's mine is not operating because the rates are unreasonably high; if the easement is terminated, the tariffs will have to be lowered; therefore, the easement must be terminated until a lower tariff is set; and by lowering the tariff, ACP will begin mining and start shipping phosphate across the pipeline and paying royalties to the trust. This argument is flawed because it begins and ends with the assumption that rates are unreasonable, which is a determination that belongs exclusively to the ICC and has not yet been made. *See Chicago & North Western Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318, 101 S.Ct.

1124, 1130, 67 L.Ed.2d 258 (1981); *see also Burlington Northern, Inc. v. United States*, 459 U.S. 131, 141, 103 S.Ct. 514, 521, 74 L.Ed.2d 311 (1982) (finding that "primary jurisdiction to determine the reasonableness of rates lies with the [ICC]").

■■■ In view of the fact that the ICC has exclusive jurisdiction to determine the reasonableness of this tariff and is currently in the process of doing so, it is not in the best interests of the trust for this court to terminate the easement, thereby circumventing those proceedings and forcing FS Industries to close its mine. Such action by the court could subject the trust to potentially expensive litigation with Chevron and FS Industries if the ICC eventually upholds the reasonableness of the proposed tariff, and furthermore, it is not clear that terminating the easement will provide any benefit to the trust.[2] For instance, even if this court were to terminate the easement, the State does not have the authority to set specific rates that would allow ACP to mine and ship phosphate. And if the State were to take the further step of terminating and then reissuing the easement conditioned upon providing fair access to ACP, the determination of "fair access" would still be in the exclusive jurisdiction of the ICC. *See Maislin Indus., U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 119, 110 S.Ct. 2759, 2762, 111 L.Ed.2d 94 (1990) (finding that "ICC has primary responsibility for determining whether a rate or practice is reasonable").

Conversely, if the court does not terminate the easement and the ICC eventually determines that the rates are unreasonable, claims filed by the Division in the current ICC proceeding and pending antitrust suit protect the interests of the trust's beneficiaries. Finally, by approving the assignment of the easement from Chevron to FS Industries, the Division is not precluded from pursuing remedies for damages through ICC proceedings or the pending antitrust litigation.

In conclusion, it is not in the best interests of the trust to terminate the easement because such action would be inconsistent with

2. In addition, if the ICC determines that the rates which Chevron published and FS Industries adopted are reasonable, then the Division might

well face a claim for substantial damages resulting from the closure of the FS mine.

the possibility that the ICC may eventually uphold the reasonableness of the proposed tariffs. Therefore, the district court correctly concluded that rule 640–40–1700 is discretionary and that the Director exercised this discretion in the best interests of the trust. We affirm the judgment of the district court.

ZIMMERMAN, C.J., and HOWE, and RUSSON, JJ., concur in DURHAM, J.'s, opinion.

STEWART, Associate C.J., concurs in the result.