1999 Utah Ct. App. 389

Reml A. MABUS, Petitioner and Appellee,

v.

G. Barton BLACKSTOCK, Bureau Chief, Drivers' License Division, Department of Public Safety, State of Utah, Respondent and Appellant.

No. 981668–CA.

Court of Appeals of Utah.

Dec. 30, 1999.

Jan Graham, Atty. Gen., and James H. Beadles, Asst. Atty. Gen., Salt Lake City, for Appellant.

D. Scott Little, Sandy, for Appellee.

Before BENCH, JACKSON and ORME, JJ.

## OPINION

JACKSON, Judge:

¶ 1 The Driver License Division (the Division) appeals from the trial court's order reinstating Reml A. Mabus's driver's license. We affirm.

## BACKGROUND

¶ 2 On January 18, 1998, Mabus was arrested for drunk driving. He refused the police officer's request that he take an intoxilyzer test, even after being orally warned that his driver's license could be revoked for his refusal.

¶ 3 On February 6, 1998, Mabus sent a letter asking the Division to hold a hearing regarding the revocation of his license. The Division responded with a letter dated February 11, 1998, denying his request because it was sent more than ten days after his arrest. *See* Utah Code Ann. § 41–6–44.10(2)(e)(ii) (Supp.1999) (requiring hearing request "within ten days after the date of the arrest"). Effective February 16, 1998, the Division revoked Mabus's license.

¶ 4 On March 18, 1998, Mabus petitioned the district court for a trial de novo to review the Division's informal adjudicative proceeding revoking his license. *See id.* § 41–6–44.10(2)(j) (Supp.1999) (stating "[a]ny person whose license has been revoked by the Driver License Division ... may seek judicial review" at trial in district court); *id.* § 63–46b–15(1)(a) ("The district courts have jurisdiction to review by trial de novo all final agency actions resulting from informal adjudicative proceedings...."). In his petition, he alleged that insufficient evidence supported the Division's decision.

¶ 5 At the end of the trial on August 12, 1998, the trial court reversed the Division's revocation order and reinstated Mabus's license. The trial court made the factual finding that "[n]o evidence was presented that the peace officer submitted a signed report as required by Utah Code Annotated § 41–6–44.10(2)(d)." Relying on *Moore v. Schwendiman*, 750 P.2d 204 (Utah Ct.App.1988), the trial court followed up with the legal conclusion that "[t]he failure of the peace officer to submit a signed report ... is fatal to the revocation process." The Division challenges only the latter.

## ANALYSIS

¶ 6 The Division argues that *Moore*'s analysis of the implied consent statute from 1984 is inapplicable to this case, which involves a later version of the statute with significant changes. *See* Utah Code Ann. § 41–6–44.10 (Supp.1999); *Moore v. Schwendiman*, 750 P.2d 204, 204–07 (Utah Ct.App. 1988). At the time we wrote *Moore*, the

statute required a peace officer to submit to the Division [1] within five days of a drunk driving arrest a sworn report that the arrestee had refused chemical testing for blood alcohol content. *See* Utah Code Ann. § 41-6-44.10(2) (Supp.1985). Within twenty days of receiving the officer's report, the Division had to notify the arrestee of the revocation hearing. *See id.*

■ ¶ 7 In *Moore*, we held that—because the Division's receipt of the sworn report initiated the revocation process—the Division had the burden of proving in the revocation proceedings that the officer had submitted the report within the five-day period. *See Moore*, 750 P.2d at 205-07. We stated that "'whether denominated jurisdictional or not, the sworn report "is essential to the validity of the subsequent proceedings ... for revocation."'" *Id.* at 205 (citations omitted). It is true, however, as the Division argues, that submission of a sworn report to the Division no longer initiates the revocation process.

■ ¶ 8 At Mabus's invitation, we have reviewed the statutory process at issue and have thereby determined—analogous to *Moore*—that under the current codification the process is now initiated immediately after the arrestee refuses chemical testing. *See*

Utah Code Ann. § 41-6-44.10(2) (Supp.1999). At that time,

> a peace officer shall serve on the person, on behalf of the Driver License Division, immediate notice of the Driver License Division's intention to revoke the person's privilege or license to operate a motor vehicle. When the officer serves the immediate notice on behalf of the Driver License Division, he shall ... supply to the operator, on a form approved by the Driver License Division, basic information regarding how to obtain a hearing before the Driver License Division.

*Id.* Following *Moore*'s lead in targeting the *state action* triggering the revocation process, we must conclude that the police officer's service of the immediate notice of intention to revoke with a form giving basic information on how to obtain a hearing (service of immediate notice and basic information) is the initiatory event under the current statute.[2]

■ ¶ 9 However, we disagree with the Division that these statutory changes render *Moore* inapplicable now. We simply adapt *Moore*'s analysis to the current statute by making a substitution. The sworn statement that initiated the revocation process at the

---

1. The statute then referred to the "Department," meaning the Department of Public Safety. Utah Code Ann. § 41-6-44.10 (Supp.1985). The statute now refers to the "Driver License Division." To avoid confusion, we simply use the "Division" to refer to both throughout this opinion.

2. We acknowledge, as the dissent notes, that *Moore v. Schwendiman*, 750 P.2d 204 (Utah Ct. App.1988), states that under the current statute the driver's "written application for an administrative hearing within ten days after the date of the arrest" is the "time requirement that begins the administrative hearing process." *Id.* at 207 n. 1. However, we decline to follow that dicta because the question of what initiates the revocation process under the present statute was not before us then. Now, with the benefit of briefing and analysis specific to this question, we are able to make a better-reasoned interpretation of the statute.

As we stated in the above text, the initiatory event most closely aligned with that identified in *Moore*—the state action launching the revocation process—is the service of immediate notice and basic information. In due process terms, the initiatory events recognized both in *Moore* and in our case make good sense. "[T]he right to drive

is a valuable right or privilege and it cannot be taken away without procedural due process." *Ballard v. State, Motor Vehicle Div., Licensing Dep't*, 595 P.2d 1302, 1304 (Utah 1979). And, "[a]t a minimum, '[t]imely and adequate notice and an opportunity to be heard in a meaningful way are at the very heart of procedural fairness.'" *In re Worthen*, 926 P.2d 853, 876 (Utah 1996) (second alteration in original) (quoting *Nelson v. Jacobsen*, 669 P.2d 1207, 1211 (Utah 1983)); *see also In re N.H.B.*, 777 P.2d 487, 489 (Utah Ct.App.1989) ("Procedural due process entails 'procedural' requirements, notably notice and opportunity to be heard, which must be observed in order to have a valid proceeding affecting life, liberty, or property.'" (quoting *Wells v. Children's Aid Soc'y*, 681 P.2d 199, 204 (Utah 1984))). The statute recognizes as much by mandating that the officer serve immediate notice and basic information upon the arrestee-driver. *See* Utah Code Ann. § 41-6-44.10(2) (Supp. 1999). Drivers cannot "initiate" the revocation process by requesting a hearing within ten days of their arrests if they have not been notified that hearings are available and how and when they may request hearings. Thus, the true precipitating event in the revocation process is the officer's

time of that case is replaced by the service of immediate notice and basic information that initiates the revocation process now. Thus, " 'whether denominated jurisdictional or not, [service of immediate notice and basic information] "is essential to the validity of the subsequent proceedings ... for revocation." ' " *Moore*, 750 P.2d at 205 (citations omitted). Consequently, the Division has the burden of producing "competent evidence that the revocation proceeding was initiated by" service of immediate notice and basic information. *Id.* As in *Moore* when the Division had to show the sworn report was submitted, if the Division does not now show that service of immediate notice and basic information occurred, "appellant's license revocation proceeding was invalid and the revocation a legal nullity." *Id.*

¶ 10 The policies with which we supported our analysis in *Moore* support our adaption of that analysis to this case: "A driver whose license is subject to revocation for his or her failure to take a chemical test has a right to a prompt hearing and the arresting officer's failure to observe the ... requirement [of service of immediate notice and basic information] could jeopardize this right." *Id.* at 206. Moreover, prompt notice "assures the accuracy and reliability of" the information presented in the subsequent revocation proceedings and "obviates possible error which may arise because of the passage of time." *Id.* As we further noted,

> The purpose of the entire drunken driving statutory scheme is to expeditiously remove drunken drivers from Utah's roads. Thus, time is of the essence in the statutory scheme when considered as a whole and

substantial rights could depend on compliance with the ... requirement [of service of immediate notice and basic information]. *Id.* (internal citation omitted).

 ¶ 11 Incorporating these principles from *Moore* into our analysis of this case under the new statutory scheme, we now review the sufficiency of the evidence presented at the trial de novo. It is undisputed that the Division failed to present evidence that the officer here served Mabus with the statutorily required immediate notice of the Division's intent to revoke, along with basic information on how to obtain a hearing on the matter.[3] This failure "render[ed] the administrative revocation of appellant's license and the derivative district court review void and the revocation a legal nullity." *Id.* at 207.

 ¶ 12 Just as we noted in *Moore*, "[o]ur decision today should not hinder the State from expeditiously removing drunken drivers from public roads." *Id.* For the limited purpose of showing service of immediate notice and basic information, the Division may introduce into evidence at trial either the officer's testimony that he or she effected written service of immediate notice and basic information or a copy of the immediate notice and basic information showing timely service to the arrestee. "Either approach would have insulated this case from reversal on appeal" to the trial court. *Id.*

¶ 13 We thus affirm the trial court's order reinstating Mabus's driver's license, although we do so on a different ground. *See Gibbs M. Smith, Inc. v. United States Fid. & Guar.*

---

service of immediate notice and basic information.

**3.** The dissent's analysis of the evidence misses the mark. We are speaking of evidence that the officer served the *mandatory* immediate notice of intent to revoke and the form (obviously a *written* document of some kind) stating basic information on how to obtain a hearing. The dissent merely marshals the evidence showing that the officers orally told Mabus that if he did not submit to the breath test, he could have his driving privileges suspended. This is not the same as evidence showing that the officers *served* Mabus *with notice* of intent to revoke (implying something written) and *supplied Mabus with a form* (again, something written) containing "basic information regarding how to obtain a hear-

ing before the Driver License Division." Utah Code Ann. § 41–6–44.10(2)(b)(iii) (Supp.1999).

The dissent further relies on the February 11, 1998 letter to Mabus from the Division as evidence that Mabus received the mandatory service of immediate notice and basic information from an officer at the time of his arrest. However, we cannot accept this self-serving, after-the-fact form letter as competent evidence to prove that Mabus received the proper form when he was arrested. There is no evidence that whoever generated and signed the Division's letter was present when Mabus was arrested, nor was an actual copy of the immediate notice and basic information referred to or attached. We therefore hold to our characterization that there is an undisputed lack of evidence on this issue.

*Co.,* 949 P.2d 337, 342 n. 3 (Utah 1997) (stating we may affirm trial court on any proper ground even though trial court has given different reason for its decision). Based on our disposition, we need not address the Division's argument attacking the trial court's conclusion of law regarding the submission of the signed report to the Division within five days of arrest.[4]

¶ 14 Affirmed.

¶ 15 I CONCUR: GREGORY K. ORME, Judge.

BENCH, Judge (dissenting):

¶ 16 I see this case somewhat differently than do my colleagues. First, I disagree with the main opinion's assertion that "[i]t is undisputed that the Division failed to present evidence that the officer here served Mabus with the statutorily required immediate notice of the Division's intent to revoke, along with basic information on how to obtain a hearing." Second, the main opinion ignores the impact of a de novo review of an informal agency proceeding under the Utah Administrative Procedures Act (UAPA).

## I. Evidence of Notice

¶ 17 In the mid–1980s, the event that invoked the jurisdiction of the Division in implied-consent cases was the submission, within five days of arrest, of a report signed by the arresting officer. *See Moore v. Schwendiman,* 750 P.2d 204, 206–07 (Utah Ct.App. 1988). The main opinion asserts that, under the current statutory scheme, the event that initiates the revocation process is the "service of immediate notice and basic information." *Moore,* however, indicates that the driver's "written application for an administrative hearing within ten days after the date

of arrest" is now the event that "begins the administrative hearing process." *Id.* at 207 n. 1. Even assuming that providing notice and basic information to the driver is the triggering event, that requirement was met in this case.

¶ 18 In the district court proceedings, the Division called Officer Cardall to testify. Officer Cardall testified that he and Officer Mia gave the required admonition to Mabus. Officer Cardall also testified that Mabus refused to take the requested breath test. Mabus then took the stand and contended that he agreed to take a breath test, but refused a blood test because he "didn't feel comfortable with them drawin' blood." On cross examination, Mabus was asked whether he recalled being read an admonition that if he did not submit to the requested test his driving privileges would be suspended. Mabus answered in the affirmative.

¶ 19 Furthermore, attached to Mabus's petition for review in district court is a letter from the Division, dated February 11, 1998, which states as follows:

Recently, you were arrested for Driving Under the Influence and *were served with a notice of this Department's intention to suspend or revoke your Utah driving privileges as a result. In that notice you were informed that you have the right to request in writing a hearing on this intended suspension. The notice specified your WRITTEN REQUEST must be sent to the Department WITHIN TEN (10) DAYS of the date of your arrest.*

The Department has received your written request for a hearing in this matter. However, the postmark on your letter indicates that the request was not sent within the statutorily mandated 10–day period. Therefore, the Department must deny

---

4. As another basis upon which to reverse the trial court, the Division argues that Mabus's petition requesting review in the trial court was not particular enough under the Utah Administrative Procedures Act and the Utah Rules of Civil Procedure to allow Mabus to use his argument that he should prevail because of the lack of evidence about submission of a signed report. The Division makes this argument even in light of the fact that there was no actual hearing before the Division for the trial court to "review" because Mabus's hearing request came too late. *See* Utah

Code Ann. § 63–46b–15(2) (Supp.1999). We have carefully considered this issue and conclude it is wholly without merit; we thus decline to address it further. *See State v. Carter,* 776 P.2d 886, 888 (Utah 1989) (holding appellate court "need not analyze and address in writing each and every argument, issue, or claim raised and properly before us on appeal"); *cf. Reese v. Reese,* 984 P.2d 987, 991 (Utah 1999) (holding, to allow supreme court certiorari review, this court must "at the very least identif[y] the basis for refusing to treat an issue").

your request for an administrative hearing on this matter. The suspension of your Utah driving privilege will automatically take place on the 30th day after the date of your arrest.

You have the right to file a petition for a hearing regarding this matter in a court of record in your county of residence. This petition must be filed within thirty days after the date of your suspension.

(Emphasis added.) Thus, contrary to the assertion in the main opinion, the only evidence in the record is that Mabus received the statutory notice.

¶ 20 The trial court reinstated Mabus's license on the ground that the Division presented no evidence that the proceeding was properly initiated by filing a sworn report of the arresting officer within five days. In view of the current statutory scheme—regardless of whether the triggering event is the driver's submitting a written request for an administrative hearing or the Division's providing the driver with basic information—the trial court's ruling is erroneous. As to the alternate basis for affirmance relied upon by my colleagues, the record clearly reflects that Mabus received the notice to which he was entitled.

## II. The Trial De Novo

¶ 21 My second concern is of an even more fundamental nature. When a trial de novo is held in district court, as in this case, errors committed by either Mabus or the Division at the administrative level are rendered immaterial and harmless. The majority's reliance on *Moore v. Schwendiman*, 750 P.2d 204 (Utah Ct.App.1988), for definitive guidance in this case is misplaced because *Moore* predates UAPA.[1] UAPA clearly controls in the instant case, making *Moore* irrelevant to our consideration of the effect of a trial court's de novo review of an informal agency proceeding.

¶ 22 In this case, the Division issued its final decision revoking Mabus's license on February 10, 1998. In that order, he was informed—just as he was informed in the letter of February 11, 1998—that he could "APPEAL THIS ACTION IN THE DISTRICT COURT IN THE COUNTY OF YOUR RESIDENCE WITHIN THIRTY (30) DAYS." Mabus petitioned for judicial review in district court, and received the trial de novo to which he was statutorily entitled. *See* Utah Code Ann. § 63–46b–15(1)(a) (Supp.1999) (stating "district courts have jurisdiction to review by trial de novo *all* final agency actions resulting from informal adjudicative proceedings") (emphasis added).

¶ 23 Under UAPA, no prejudice occurs in an informal proceeding "because the litigant has an *absolute right to a trial de novo* before the district court." *Brinkerhoff v. Schwendiman*, 790 P.2d 587, 590 (Utah Ct. App.1990) (emphasis added). Moreover, "pursuant to section 63–46b–15(1)(a), review by trial de novo means a new trial with *no deference to the administrative proceedings* below." *Archer v. Board of Lands and Forestry*, 907 P.2d 1142, 1145 (Utah 1995) (emphasis added). Hence, in view of Mabus's absolute right to a trial de novo, and its concomitant non-deferential nature, "the trial de novo cured any technical procedural errors occurring at the informal [agency proceeding]." *Brinkerhoff*, 790 P.2d at 590. Accordingly, whether Mabus received the statutory notice and whether he timely invoked his right to an administrative hearing are not material to the proceedings in district court.

## CONCLUSION

¶ 24 In light of the foregoing, I would reverse the ruling of the district court and remand the case so the court can enter an order based on the evidence adduced at trial

---

1. The administrative decision in *Moore* was issued on October 4, 1984. UAPA was enacted in 1987. The transition procedures for UAPA, Utah Code Ann. § 63–46b–22 (1997), provide that "all agency adjudicative proceedings commenced by or before an agency on or after January 1, 1988" are governed by UAPA procedures, and that all such actions filed before December 31, 1987 are not governed by UAPA, "even if those proceedings are still pending before an agency or a court on January 1, 1988." *Id.*

as to whether Mabus refused to take the requested chemical test.