2001 UT App 352

Phillip Edward MILLER, Petitioner, Appellant, and Cross–appellee,

v.

G. Barton BLACKSTOCK, Bureau Chief, Driver License Division, Respondent, Appellee, and Cross–appellant.

No. 20010306–CA.

Court of Appeals of Utah.

Nov. 23, 2001.

Benjamin A. Hamilton, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Rebecca D. Waldron, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and ORME.

## OPINION

BENCH, Judge:

¶ 1 Appellant appeals the judgment of the trial court after a trial de novo revoking his driver's license for ten months because he refused to submit to a chemical test pursuant to Utah Code Ann. § 41–6–44.10(2)(h)(i)(A) (1998) [1]. We affirm in part and reverse in part.

---

1. We cite to the 1998 version of the law throughout this opinion because section 41–6–44.10 has undergone several amendments since Appellant's arrest, including an increase in the revocation period from one year to eighteen months. See Utah Code Ann. § 41–6–44.10(2)(e)(iv)(A) (Supp. 2001).

## BACKGROUND

¶2 On January 21, 2000, Appellant was arrested for driving under the influence of alcohol. After transporting Appellant to the police station, the arresting officer asked Appellant to perform a breath test, and informed him that a refusal to submit to the test could result in revocation of his driving privileges for up to one year. *See* Utah Code Ann. § 41–6–44.10(2)(a). Appellant refused to submit to the test.

¶3 Pursuant to the statute, the officer took Appellant's license and served him with a notice of the Utah State Driver License Division's (Division) intent to revoke the license within thirty days. The notice also informed Appellant that he was entitled to a hearing to contest the revocation of his license and gave him instructions for requesting the hearing. On the notice is a section where the officer checks either: "This is valid as a temporary license for up to thirty (30) days from the date of this notice," or "This is not valid as a temporary license for up to thirty (30) days from the date of this notice." The officer should have checked the "valid" box because Appellant's license was valid at the time. Instead, the officer erroneously marked the "not valid" box, citing as a reason for not issuing a temporary license "refusal of test."

¶4 Pursuant to the notice, Appellant requested a hearing, which was held on February 15, 2000, twenty-five days after his arrest. At the conclusion of the hearing, the Division revoked Appellant's driving privileges for one year because of his refusal to submit to the chemical test. As provided for in section 41–6–44.10(2)(i), Appellant requested judicial review of the Division's action. Following a bench trial, the trial court ruled that the officer's failure to issue Appellant a valid temporary license violated Appellant's due process and statutory rights, but did not preclude the Division from revoking Appellant's license. As a remedy for the time Appellant was without a license, the trial court ordered the revocation period reduced by sixty days.

¶5 Appellant appeals the trial court's order, arguing that the officer violated his statutory and due process rights, and that these violations were fatal to the entire revocation process. The Division cross-appeals, contending that the trial court erred in reducing the revocation period by sixty days rather than the twenty-five days Appellant was without a license before the hearing. The trial court stayed the revocation pending our decision.

## ISSUES AND STANDARDS OF REVIEW

¶6 The issues for our review are whether the trial court correctly concluded that (1) the officer's failure to provide Appellant with a temporary license was a statutory and due process violation, (2) the violation was not fatal to the revocation process, and (3) the appropriate remedy is to reduce the revocation period by sixty days. "[W]e review the trial court's conclusions of law under a correction-of-error standard." *Brinkerhoff v. Schwendiman*, 790 P.2d 587, 589 (Utah Ct.App.1990).

## ANALYSIS

¶7 Section 41–6–44.10(2)(b)(ii) provides that after serving notice on behalf of the Division of its intent to revoke an individual's driving privileges, the arresting officer "shall ... issue a temporary license effective for only 29 days." *Id.* After taking Appellant's permanent, laminated license pursuant to section 41–6–44.10(2)(b)(i), the arresting officer did not provide Appellant with a temporary license. The State concedes that the officer violated the statute by failing to provide Appellant with a temporary license.

¶8 Appellant argues that this failure nullifies the entire revocation process. In support of his argument, Appellant relies upon our decision in *Moore v. Schwendiman*, 750 P.2d 204 (Utah Ct.App.1988). In *Moore*, this court determined that the Division's "failure to establish when the required sworn report was filed renders the administrative revocation of appellant's license and the derivative district court review void and the revocation a legal nullity." *Id.* at 207. Evidence of receipt of the report within the statutorily prescribed time "initiates the revocation process," *id.* at 206, and as such " ' "is essential to the validity of the subsequent proceedings ... for revocation...." ' " *Id.* at 205 (cita-

tions omitted) (alteration in original). Similarly, in *Mabus v. Blackstock*, 1999 UT App 389, 994 P.2d 1272, we concluded that under the current statutory scheme the revocation process is initiated when the officer serves the arrestee with the notice stating the Division's intention to revoke, and providing information on how the arrestee may obtain a hearing. *See id.* at ¶ 8. We followed the reasoning of *Moore,* stating that the Division's failure to establish that the notice had been served voided the revocation process ab initio. *See id.* at ¶ 9.

¶ 9 Appellant argues that, under *Moore* and *Mabus,* any violation of the statute nullifies the revocation process. We disagree. The revocation process in *Moore* and *Mabus* was void because there was no proof of the act initiating the process. Here, there is no dispute that Appellant was properly notified of the Division's intent to revoke his license and given all the relevant information as to how to obtain a hearing. The officer's failure to provide Appellant with a temporary license for the time period between his arrest and the hearing did not affect the initiation of the revocation process nor call into question the validity of the hearing. Therefore, the officer's error does not render the revocation process defective.

¶ 10 Appellant also argues that the officer's failure to provide him with a temporary license constitutes a due process violation, which nullifies the revocation process. In support of this argument, Appellant cites *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). In *Bell,* the Supreme Court held that a Georgia law suspending the driver's license of an uninsured motorist who had been involved in an accident violated procedural due process. *See id.* at 542, 91 S.Ct. at 1591. The Supreme Court's difficulty with the Georgia statute was primarily that it provided no mechanism for either a pre- or post-suspension hearing whereby a determination could be made as to whether the motorist was at fault or whether the claim was actionable. *See id.* The Supreme Court declared that the statute could be remedied and "procedural due process will be satisfied by an inquiry limited to the determination whether there is a reasonable

possibility of judgments in the amounts claimed being rendered against the licensee." *Id.* at 540, 91 S.Ct. at 1590.

¶ 11 Later, in *Mackey v. Montrym,* 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), the Supreme Court held that a Massachusetts statute mandating immediate suspension of a driver's license after a refusal to submit to chemical testing, and providing for only a postsuspension hearing, was not "void on its face as violative of the Due Process Clause of the Fourteenth Amendment." *Id.* at 2, 99 S.Ct. at 2613. The Court held that "the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to preclude any possibility of error." *Id.* at 13, 99 S.Ct. at 2618. The Court also concluded that the state's "compelling interest in highway safety justifies the [state] in making a summary suspension effective pending the outcome of the prompt postsuspension hearing available." *Id.* at 19, 99 S.Ct. at 2621.

¶ 12 Although Utah's implied consent statute differs from the Massachusetts statute in that the Utah statute provides for a prerevocation hearing after a refusal to submit to a chemical test, *see* Utah Code Ann. § 44–6–44.10(2), the reasoning of the Supreme Court in *Mackey* is instructive. The *Mackey* Court explained that determining what "process is due to protect against an erroneous deprivation" of driving privileges requires a balancing of (1) the private interest that will be affected, (2) the risk of error, and (3) the government's interest. *Mackey,* 443 U.S. at 10, 99 S.Ct. at 2617.

¶ 13 In this case, the private interest involved, the possession and use of a driver's license, is an important one. *See Bell,* 402 U.S. at 539, 91 S.Ct. at 1589. However, "the duration of any potentially wrongful deprivation of a property interest is an important factor in assessing the impact of official action on the private interest involved." *Mackey,* 443 U.S. at 12, 99 S.Ct. at 2618. The maximum amount of time Appellant could have been erroneously deprived of his license was twenty-nine days. In fact, Appellant was actually deprived of his license for only

twenty-five days before the hearing. Thus, the length of time Appellant was without a temporary license was not excessive, especially since he was informed of the Division's intent to revoke his license for one year because of his refusal to submit to the chemical test. As to the second prong, the risk of erroneous deprivation, Appellant acknowledged before the trial court that "[i]t's not happening very often." While it is certainly the aim of the legal process to minimize such errors, due process does not require that the revocation process be error-free. *See id.* at 13, 99 S.Ct. at 2618. Finally, as to the third prong, the government has a significant safety interest in expeditiously removing drunk drivers from the road. *See id.* at 17, 99 S.Ct. at 2620.

¶ 14 While it seems unlikely that the violation here is a due process violation, we need not so rule. Even if the officer's failure to issue a temporary license could be regarded as violative of due process, the revocation process is not nullified. An adequate remedy exists by deducting the time of the erroneous deprivation from the revocation period. In *Voellmy v. Broderick*, 91 Hawai'i 125, 980 P.2d 999 (App.1999), a case factually similar to this one, the Hawaii Court of Appeals held that reversing the revocation of the appellant's license is not an appropriate remedy. *See id.* at 1004. The court emphasized that the appellant did not show he had been prejudiced by the officer's failure to issue him a temporary permit, and that the hearing officer credited the appellant for the twenty-five days of lost driving privileges. *See id.*

¶ 15 Appellant in this case has likewise not demonstrated how the officer's error has prejudiced him in a way that cannot be cured by reducing his revocation period by twenty-five days. We therefore agree with the Division that the trial court's remedy of a sixty day reduction is excessive because a twenty-five day reduction will make Appellant whole. Therefore, we conclude that even if Appellant's due process rights were in some way violated by the officer's error, the appropriate remedy to cure the violation is to reduce the one year revocation period by twenty-five days.

## CONCLUSION

¶ 16 We conclude that the officer's error in not issuing a valid temporary license to Appellant was not fatal to the revocation process because the process was properly initiated when the officer served Appellant with the notice of the Division's intent to revoke his license and with the hearing information. We also conclude that the appropriate remedy is to reduce the revocation period by the amount of time Appellant was deprived of his license before the hearing.

¶ 17 Therefore, we reverse the order of the trial court and remand for entry of judgment consistent with this opinion.

¶ 18 WE CONCUR: JAMES Z. DAVIS, Judge, and GREGORY K. ORME, Judge.