2005 UT App 285

SAVE OUR CANYONS, a Utah non-profit corporation; Herbert & Helga Lloyd, individuals; Karl Bryner, an individual; Mark & Pamela Anderson, individuals; Stephan & Veronique Otto, individuals; Lionel & Janice Mausberg, individuals; and Brian Moench, an individual, Plaintiffs and Appellants,

v.

BOARD OF ADJUSTMENT OF SALT LAKE COUNTY; Wasatch Pacific, Inc., a corporation; and Terry Diehl, an individual, Defendants and Appellees.

No. 20040766–CA.

Court of Appeals of Utah.

June 23, 2005.

Paul R. Poulsen and Joseph E. Tesch, Tesch Law Offices, Park City, for Appellants.

David E. Yocom, District Attorney's Office, Thomas L. Christensen, Salt Lake County Attorney's Office, Richard D. Burbidge, and Jefferson W. Gross, Burbidge & Mitchell, Salt Lake City, for Appellees.

Before Judges BILLINGS, DAVIS, and THORNE.

## OPINION

BILLINGS, Presiding Judge:

¶1 Appellants Save Our Canyons and various individuals (collectively SOC) challenge the trial court's order granting summary judgment to Appellees Board of Adjustment of Salt Lake County (the Board), Wasatch Pacific, Inc., and Terry Diehl (collectively Wasatch) and denying SOC's motion for summary judgment. Specifically, SOC argues that the trial court erred by affirming the Board's decision granting three variances from the Salt Lake County Foothills and Canyons Overlay Zone ordinances (FCOZ) for an access road to Wasatch's property (the Property) located north of the mouth of Big Cottonwood Canyon. We affirm.

## BACKGROUND

¶2 On December 15, 1993, Salt Lake County (the County) approved a fifty-two lot subdivision of the Property.[1] The County

---

1. The Boyer Company (Boyer) originally owned the Property and it was originally approved for a

also approved an access road (original access road) to the Property that ran adjacent to the Salt Lake City Water Treatment Plant (the Plant) at the mouth of Big Cottonwood Canyon. The Salt Lake City Water Department (Water Department) notified Wasatch that it objected to the location of the original access road because of its close proximity to the Plant after the September 11, 2001 terrorist attacks. The Water Department informed Wasatch that it would refuse to provide service to the Property unless the original access road was relocated east of the Plant.

¶ 3 In order to alleviate the Water Department's safety concerns, Wasatch sought approval for construction of a new access road (new access road). On August 20, 2002, Wasatch filed an application with the Board requesting fourteen variances from FCOZ and the Foothills and Canyons Site Development and Design Standards. On December 10, 2002, the Salt Lake County Planning and Development Services Division approved the new access road subject to the Board's granting the variances.

¶ 4 On December 28, 2002, the Board held a public hearing on the fourteen variances. At that hearing, the Salt Lake County planning staff (the Staff) recommended denial of Wasatch's variance application because "the impacts to the site that are proposed by [Wasatch] far exceed the intent and purpose of the FCOZ ordinance."[2] The Board then closed the public hearing and did not reach a decision regarding the variances. The Board continued the matter to February 19, 2003 and requested that Wasatch coordinate and conduct any studies necessary to provide the Staff with more technical information regarding construction of the new access road.

¶ 5 At the February 19 meeting, the Staff, after conferring with Wasatch and receiving further technical information, again recommended denial of the fourteen variances. One of the Staff members stated that Was-

atch had not fully explored other means of access to the Property including the original access road adjacent to the Plant. The Staff also expressed concern that the new access road required deep cuts and fills along the slope. After lengthy discussions, including testimony from the Staff; the County geologist; the County transportation engineer; Wasatch and its engineer; the County attorney; and after viewing a computer model of the new access road, the Board voted three to two to grant the fourteen variances subject to the approval of findings of fact and conclusions of law (Findings and Conclusions) to be presented at the next Board meeting.

¶ 6 After the Board approved the fourteen variances, on February 25, 2003, Utah Power & Light Company (UP & L), which owned the property where the original access road adjacent to the Plant was to be constructed, granted a conservation easement (the Easement) to Salt Lake City. The purpose of the Easement "is to preserve, protect[,] and maintain the Easement Property predominantly in a natural, scenic[,] and open condition in perpetuity in order to protect [Salt Lake City's] use of its water treatment plant."

¶ 7 On March 19, 2003, the Board held a meeting during which a motion was made to adopt the Findings and Conclusions for the fourteen approved variances. The Board voted not to adopt the Findings and Conclusions by a three to two vote because one Board member wanted more time to study them. Rather than continuing the vote, the Board denied the variances.

¶ 8 On April 11, 2003, Wasatch filed a notice of claim for injury with the County pursuant to Utah Code section 63–30–11, which provides, in relevant part, "[a]ny person having a claim for injury against a governmental entity ... shall file a written notice of claim with the entity before main-

sixty-one lot subdivision. Wasatch obtained an option to purchase the property and acquired the property from Boyer on February 26, 2003.

2. Under Salt Lake County Ordinance § 19.72.010, the general purpose of the FCOZ is to "promote the health, safety, and public wel-

fare of the residents of the County, and, while being cognizant of private property rights, to preserve the natural character of the foothills and canyons by establishing standards for foothill and canyon development proposed in the unincorporated areas of the County."

taining an action." Utah Code Ann. § 63–30–11 (2003).[3] At a subsequent Board meeting, Wasatch indicated that it had filed the notice in order to preserve its claim.

¶ 9 Wasatch redesigned the new access road (the redesigned access road) in order to alleviate most of the Staff's concerns with the previous design and eliminate the need for all but three of the fourteen variances. On April 28, 2003, Wasatch submitted a second application requesting the three variances from FCOZ: (1) section 19.72.030D.3.b, which limits individual segments of a road that will cross slopes between 30% and 50% to no more than 100 feet in length, (2) section 19.72.030D.3.c, which limits the cumulative length of individual segments that will cross slopes between 30% and 50% to no more than 10% of the total length of the road, and (3) section 19.72.030D.4, which provides that no street shall cross slopes greater than 50%.

¶ 10 On June 18, 2003, the Board held a public hearing on Wasatch's request for the three variances from FCOZ on the redesigned access road. The Staff recommended that the Board grant the three variances. In its written recommendations, the Staff stated that the previous design was reviewed on the basis that it was not the sole means of access to the Property and that "[s]ufficient information has now been presented to confirm [Wasatch's] previously—unsubstantiated assertions that access via the subject property is indeed the only location for the proposed roadway." Thus, the Staff concluded that literal enforcement of FCOZ would deny Wasatch access to the Property and prohibit all development potential resulting in an unreasonable hardship to Wasatch. In addition, the Staff found that the new road design (1) eliminates the most severe cuts and fills required by the previous design because the new design incorporates elevated bridge segments, (2) better addresses environmental concerns by leaving wildlife corridors and surface water run-off substantially unimpeded in the elevated bridge segment areas, (3) complies with applicable ordinance requirements wherever feasible, (4) is more respect-

ful of existing topography and strives to achieve acceptable slopes, and (5) allows for re-vegetation with native plants under and around the elevated bridge segments. The Staff also stated that Wasatch and its engineer have worked cooperatively with the County geologist, grading specialist, traffic engineer, and urban hydrologist to ensure that all safety issues will be satisfactorily addressed in the final road design and appropriately regulated through the permitted use process. Furthermore, the Staff noted that the County traffic engineer had concluded that the previous concerns regarding snow removal had been satisfactorily addressed with the new road design. After receiving the Staff's written recommendations to grant the three variances; reviewing a computer model of the redesigned road; and listening to presentations and testimony from the Staff, Wasatch, and members of the public, the Board voted unanimously to adopt the findings of the Staff and grant the three variances.

¶ 11 SOC appealed this decision to the Third District Court under Utah Code section 17–27–708, which provides that "[a]ny person adversely affected by any decision of a board of adjustment may petition the district court for a review of the decision." Utah Code Ann. § 17–27–708 (2001 & Supp. 2004). On cross-motions for summary judgment, the district court upheld the Board's decision. SOC now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 12 SOC argues that the trial court erred by upholding the Board's granting of the three variances. " 'When a lower court reviews an order of an administrative agency and we exercise appellate review of the lower court's judgment, we act as if we were reviewing the administrative agency decision directly' and 'do not defer, or accord a presumption of correctness, to the lower court's decision.' " *Carrier v. Salt Lake County*, 2004 UT 98, ¶ 17, 104 P.3d 1208 (citations omitted). Like the district court, our review is limited to whether the Board's deci-

3. Title 63, Chapter 30—Governmental Immunity Act, was repealed in 2004 and replaced by Chapter 30d—Governmental Immunity Act of Utah. *See* Utah Code Ann. §§ 63–30d–101 to –904 (2004). However, claims arising prior to July 1, 2004 are to be governed by Chapter 30. *See id.*

sion (1) "was conducted in an arbitrary or capricious manner," or (2) "illegally violated a statute, ordinance, or existing law." *Id.* at ¶ 26; *see* Utah Code Ann. § 17–27–708(2)(a), (b) (2001). We will consider the Board's decision arbitrary or capricious only if it is not "supported by substantial evidence in the record." Utah Code Ann. § 17–27–708(6); *see Patterson v. Utah County Bd. of Adjustment,* 893 P.2d 602, 604 (Utah Ct.App.1995). "In determining whether substantial evidence supports the Board's decision we will consider all the evidence in the record, both favorable and contrary .... [and] determine ... whether a reasonable mind could reach the same conclusion as the Board. It is not *our prerogative to weigh the evidence anew.*" *Patterson,* 893 P.2d at 604. However, whether or not the Board's decision "violates a statute, ordinance, or existing law," Utah Code Ann. § 17–27–708(2)(b), is reviewed for correctness, but we "also afford some level of non-binding deference to the interpretation advanced by" the Board. *Carrier,* 2004 UT 98 at ¶ 28, 104 P.3d 1208.

## ANALYSIS

¶ 13 SOC argues that the Board's grant of the three variances was arbitrary, capricious, and illegal because its decision was not supported by substantial evidence in the record, *see* Utah Code Ann. § 17–27–708(2)(a), and because the Board failed to comply with all of the requirements in Utah Code section 17–27–707 and FCOZ.

4. The Board adopted the Staff's findings at the June 18, 2003 meeting. Specifically, the Board voted unanimously to "accept the *findings of the staff* and approve the three variances." (Emphasis added.)

5. However, an applicant for a variance from a zoning ordinance may not demonstrate an "unreasonable hardship," Utah Code Ann. § 17–27–707(2)(a)(i) (2001), solely by economic loss; the hardship must be related to "special circumstances attached to the property that do not generally apply to other properties in the same district." *Id.* § 17–27–707(2)(a)(ii). In *Xanthos v. Board of Adjustment of Salt Lake City,* 685 P.2d 1032 (Utah 1984), our supreme court held that "[h]ardship is not demonstrated by economic loss alone. It must be tied to the special circumstances.... Every person requesting a variance can indicate some economic loss. To allow a variance anytime any economic loss is alleged would make a mockery of the zoning program."

¶ 14 Pursuant to Utah Code section 17–27–707, the Board may grant a variance from the zoning ordinance only if:

(i) literal enforcement of the zoning ordinance would cause an unreasonable hardship for the applicant that is not necessary to carry out the general purpose of the zoning ordinance;

(ii) there are special circumstances attached to the property that do not generally apply to other properties in the same district;

(iii) granting the variance is essential to the enjoyment of a substantial property right possessed by other property in the same district;

(iv) the variance will not substantially affect the general plan and will not be contrary to the public interest; and

(v) the spirit of the zoning ordinance is observed and substantial justice done.

Utah Code Ann. § 17–27–707(2)(a) (2001). SOC argues that the Board failed to satisfy prongs (i), (iv), and (v). However, the Board found[4] that prong (i) had been complied with as (1) there is no other location currently available for an access road than on this particular property slope, (2) literal enforcement of the zoning ordinance would deny Wasatch access to its adjoining property, (3) literal enforcement would prohibit all development potential of that parcel,[5] and (4) the road currently proposed could be safely

*Id.* at 1037. Unlike the applicant in *Xanthos,* Wasatch has demonstrated that special circumstances attach to the Property that do not generally apply to other properties in the district. Specifically, the Property is bounded on the east by forest service property and the forest service does not allow encroachment onto public property by private property interests; the Property is bounded on the west by the Plant and because of the serious safety issues that exist concerning access above the Plant since the September 11 terrorist attacks, the Water Department will not allow encroachment; UP & L granted a conservation easement to Salt Lake City that bounds the northwest corner of the Property; and the height of the hill and the elevation of Big Cottonwood Canyon Road are also limiting factors as the road must meet minimum slope requirements. Thus, Wasatch's hardship is not purely economic. *See id.*

built in a way that substantially complies with the other ordinance requirements. The Board also found that the requirements for prong (iv) had been met as (1) allowing permitted uses complies with the general plan, (2) public interest is maintained by requiring whatever is built meets safety standards, (3) public interest is also maintained by the mitigation of environmental impacts, and (4) public interest is maintained as the design minimizes negative visual impact as much as possible. Finally, the Board found that the conditions of prong (v) were met because

> [t]he Wasatch Canyons Master Plan supports residential development in the canyons subject to compliance with applicable ordinance provisions. By recognizing and respecting the rights of [Wasatch] to develop [its] property within the scope of the current ordinances, while at the same time requiring substantial compliance with those ordinances, and allowing for relief where it is impossible to comply with the strict interpretation of the ordinance, the spirit of the zoning ordinance is observed and substantial justice done.

¶ 15 SOC argues that there are no facts in the record to support the Board's findings. However, SOC has failed to marshal the evidence in the record supporting each of the challenged findings. SOC asserts that marshaling is not required in this case because the Board did not make its own findings of fact, relying instead upon the Staff's "unsubstantiated conclusory statements." SOC further argues that because there are ten years of records in this case, it is impossible to know which facts the Board relied upon in reaching its decision.

¶ 16 We have previously held that "[i]t is incumbent upon the party challenging the Board's findings or decision to marshal all of the evidence in support thereof and show that despite the supporting facts, and in light of conflicting or contradictory evidence, the findings and decision are not supported by substantial evidence." *Patterson,* 893 P.2d at 604 n. 7. We have refused to address claims for lack of proper marshaling. *See id.* at 605.

 ¶ 17 Thus, because the Board adopted the findings of the Staff, SOC could have marshaled all of the evidence in the record that supported the Staff's findings. *See id.* Because SOC failed to marshal the evidence, we accept the Board's findings. Accordingly, we will not address SOC's claim that granting the three variances was arbitrary and capricious. *See id.* at 604 ("[T]he Board's decision can only be considered arbitrary or capricious if not supported by substantial evidence.").

 ¶ 18 SOC further argues that the Board's decision was illegal because the board failed to address and comply with all FCOZ standards. In particular, SOC asserts that the Board is not permitted to grant a variance from section 19.72.030D.4 of FCOZ because it provides that "[u]nder no circumstances other than for permitted minor ski resort improvements shall any street, road, private access road, or other vehicular route cross slopes greater than fifty percent." However, this section of FCOZ merely sets forth in various subsections the development standards for roads and does not address variances. Under Utah Code section 17–27–707, a board of adjustment may grant a variance from "the requirements of the zoning ordinance as applied to a parcel of property" provided the applicant meet certain criterion, which the Board determined that Wasatch had met. Utah Code Ann. § 17–27–707(1), (2)(a). Further, there is nothing in FCOZ that prohibits the Board from granting variances from its standards. Accordingly, the Board had the authority to grant Wasatch a variance from this ordinance.

 ¶ 19 Additionally, SOC contends that the proposed road does not comply with road standards regarding the length of or number of lots within a cul-de-sac and that a final geologic report was not prepared prior the granting of the variances. The Board asserts that it was merely deciding whether or not to grant three specific variances from FCOZ; the Board was not approving the access road, nor its final design. We agree. Whether the access road complies with other development standards and ordinances was not before the Board, nor is it properly before this court.

¶ 20 SOC also contends that the Board violated the Open and Public Meetings Act, *see* Utah Code Ann. § 52–4–4 (2002), and had improper ex parte contacts with interested parties. There is no evidence in the record demonstrating that the Board conducted a closed meeting prior to the public hearing on June 18, 2003, and thus, there is nothing for us to review. Accordingly, we refuse to address this claim.

¶ 21 In addition, SOC argues that several members of the Board had improper ex parte contacts with a member of the Salt Lake County Council (the Council). SOC relies upon a newspaper article attached to its memorandum in support of its motion to clarify the record filed in Third District Court, which was denied. Thus, the article is not part of the Board's record and cannot be considered. Furthermore, the limited evidence in the record regarding ex parte contacts supports the trial court's conclusion that there were no improper ex parte contacts between members of the Board and the Council. SOC also asserts that the trial court's conclusion that there was no evidence of improper contact is "somewhat empty since the court frustrated that effort by denying [SOC's] request to engage in discovery to perfect that point." However, SOC did not appeal the denial of its discovery motion. Accordingly, we refuse to address this claim.[6]

## CONCLUSION

¶ 22 We hold that the Board's decision was supported by substantial evidence in the record and that none of the Board's findings were arbitrary, capricious, or illegal. Accordingly, we affirm.

¶ 23 WE CONCUR: JAMES Z. DAVIS and WILLIAM A. THORNE JR., Judges.

---

6. We do not reach the remaining issue regarding attorney fees under the private attorney general doctrine because of our disposition in this case.