2008 UT 85

Bret FOX, an individual; and Tawnya Fox, an individual, Plaintiffs and Appellants,

v.

PARK CITY, a Utah municipal corporation; Park City Board of Adjustment, a body organized under Park City Land Management Code; and Legacy Development Group, LLC, a Utah limited liability company, Defendants and Appellees.

No. 20070567.

Supreme Court of Utah.

Dec. 16, 2008.

Blake D. Miller, Ryan K. Done, Salt Lake City, for appellants.

Mark D. Harrington, Polly Samuels–Mc-Lean, Park City, for appellees Park City Municipal Corp. and Park City Board of Adjustment Eric P. Lee, Salt Lake City, for appellee Legacy Dev. Group.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Bret and Tawnya Fox (the "Foxes") sought to appeal Park City's issuance of a

building permit to Legacy Development Group, LLC ("Legacy"). The Park City Planning Commission (the "Planning Commission") held that the Foxes' appeal was untimely under the ten-day appeal period contained in the Park City Land Management Code (the "LMC"). The district court upheld the Planning Commission's determination that the Foxes' appeal was untimely under the LMC and, accordingly, dismissed the Foxes' petition for review.

¶ 2 While we affirm the dismissal, we hold that the district court erred in applying the ten-day appeal period of the LMC. Rather, the ten-day appeal period of Utah Code section 10–9a–704 applies. This appeal period began to run when the Foxes received notice of the permit's issuance. Because the Foxes did not appeal within this ten-day period, the Foxes' appeal was untimely, and we therefore affirm the district court's dismissal of the Foxes' petition.

## BACKGROUND

¶ 3 In May 2005, Legacy applied for a building permit with the Park City Community Planning Development Department (the "Department"). Legacy sought to construct three residential buildings on property it owned in Park City (the "Subject Property"). The Department issued the building permit on July 14, 2005. Legacy began construction on the three buildings in the fall of 2005.

¶ 4 The Subject Property is within 300 feet of a home owned by the Foxes. The Foxes claim that sometime in January 2006, they noticed that "one of the buildings appeared to be taller than it should in comparison with some of the other surrounding buildings." The following day, Mr. Fox went to the city offices and asked to review the plans for the buildings on the Subject Property. Based on his review of the plans, Mr. Fox determined that "it appeared that the buildings were going to exceed Park City's height restriction." He inquired of the Department what he must do to bring the issue to their attention and he was told that he needed to file an appeal with the Planning Commission.

¶ 5 The Foxes submitted a notice of appeal to the Planning Commission on January 19, 2006. In the notice of appeal, the Foxes claimed that the three buildings exceeded the maximum allowed height under the LMC. The Foxes also claimed that the excess height of the buildings interfered with the view from their property.

¶ 6 On June 14, 2006, the Planning Commission held a hearing on the Foxes' appeal. The Planning Commission determined that the Department's issuance of the building permit to Legacy was a final action and that, based on the LMC, a final action must be appealed within ten days. The Planning Commission held that because the Foxes did not appeal the issuance of the building permit within ten days of July 14, 2005, their appeal was untimely and that the Planning Commission lacked jurisdiction to hear the merits of the appeal. Accordingly, the Planning Commission dismissed the Foxes' appeal with prejudice.

¶ 7 The Foxes then appealed the Planning Commission's decision to the Park City Board of Adjustment (the "Board"), and the Board held a hearing on the appeal on August 22, 2006. The Board upheld the Planning Commission's determination that it lacked jurisdiction due to the Foxes' failure to timely appeal. Accordingly, the Board dismissed the appeal with prejudice.

¶ 8 The Foxes filed a petition for review in the Third District Court. The petition sought a reversal of the Board's decision, a declaratory judgment against Legacy for its violation of the LMC height restrictions, and an injunction against Legacy to bring the three buildings into compliance with the height requirements of the LMC. Park City filed a motion to dismiss, arguing that the Foxes failed to state a claim for relief due to their failure to timely file an appeal with the Planning Commission. Legacy filed a motion for summary judgment, arguing that under section 10–9a–701 of the Utah Code, the Foxes had failed to fulfill a condition precedent to judicial review by not filing a timely challenge to the issuance of the building permit. Legacy also joined in Park City's motion to dismiss and Park City joined in Legacy's motion for summary judgment.

The Foxes also moved for summary judgment on their claims.

¶ 9 Following briefing on the parties' motions, the district court held a hearing. On June 6, 2007, the district court issued its Ruling and Order. The court concluded that the issuance of a building permit constituted a final action under the LMC and that, therefore, an appeal regarding the issuance of a building permit had to be made within ten days from the issuance. Because the Foxes did not file their appeal within ten days after the issuance of the building permit, the appeal was untimely. Accordingly, the court denied the Foxes' motion for summary judgment, granted Park City's motion to dismiss, and granted Legacy's motion for summary judgment.

¶ 10 The Foxes appeal the district court's decision. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j) (Supp. 2008).

## STANDARD OF REVIEW

¶ 11 When a district court reviews an order of a local land use authority and we exercise appellate review of the district court's judgment, we act as if we were reviewing the land use authority's decision directly, and we afford no deference to the district court's decision.[1] Like the review of the district court, our review is limited to whether a land use authority's decision is "arbitrary, capricious, or illegal."[2] A land use authority's decision is arbitrary or capricious only if it is not "supported by substantial evidence in the record."[3] A land use authority's decision is illegal if it "violates a law, statute, or ordinance in effect at the time the decision was made."[4] Because a determination of illegality is based on the land use authority's interpretation of zoning ordinances, we review such determinations for correctness, but we "also afford some level of non-binding deference to the interpretation advanced by" the land use authority.[5]

## ANALYSIS

### I. THE TEN–DAY APPEAL PERIOD UNDER THE LMC DOES NOT APPLY

¶ 12 Under the LMC, the planning director's decision to issue a building permit is appealable.[6] Section 15–1–18(E) of the LMC provides that "[a]ll appeals must be made within ten (10) calendar days of the *Final Action*."[7] The question is whether the issuance of a building permit is a "final action." If it is a final action, as the Planning Commission determined and as Park City suggests to this court, then an appeal of the issuance must be made to the Planning Commission within ten days of the issuance. If it is not a final action, as the Foxes claim, then the ten-day appeal period does not apply.

¶ 13 We resolve this dispute by looking to the plain language of the LMC.[8] Section 15–1–18(A)–(C) of the LMC provides as follows:

(A) Any *decision* by the Planning Director regarding Application of this LMC to a Property may be appealed to the Planning Commission. . . .

1. *See Carrier v. Salt Lake County*, 2004 UT 98, ¶ 17, 104 P.3d 1208; *Save Our Canyons v. Bd. of Adjustment*, 2005 UT App 285, ¶ 12, 116 P.3d 978.

2. Utah Code Ann. § 10–9a–801(3)(a)(ii) (2007); *see also Carrier*, 2004 UT 98, ¶ 26, 104 P.3d 1208; *Save Our Canyons*, 2005 UT App 285, ¶ 12, 116 P.3d 978.

3. Utah Code Ann. § 10–9a–801(3)(c); *see also Save Our Canyons*, 2005 UT App 285, ¶ 12, 116 P.3d 978.

4. Utah Code Ann. § 10–9a–801(3)(d).

5. *Carrier*, 2004 UT 98, ¶ 28, 104 P.3d 1208; *see also Save Our Canyons*, 2005 UT App 285, ¶ 12, 116 P.3d 978.

6. Park City Municipal Code § 15–1–18(A) ("Any decision by the Planning Director regarding Application of this LMC to a Property may be appealed to the Planning Commission.").

7. *Id.* § 15–1–18(E) (emphasis added).

8. *See Carrier v. Salt Lake County*, 2004 UT 98, ¶ 30, 104 P.3d 1208 ("In interpreting the meaning of ... [an] ordinance, we begin first by looking to the plain language of the ordinance.").

(B) *Final Actions* by the Historic Preservation Board may be appealed to the Board of Adjustment.

(C) *Final Actions* by the Planning Commission on staff appeals may be appealed to the Board of Adjustment.... [9]

It is significant that this section designates the planning director's application of the LMC—which includes the planning director's issuance of a building permit—as a "decision" rather than a "Final Action" because, under the plain language of section 15–1–18(E), only "Final Actions" must be appealed within ten days.[10]

¶ 14 Park City argues that the issuance of a building permit should be considered a "Final Action" because it fits under the LMC's definition of "Final Action": "[t]he later of the final vote or written decision on a matter." [11] This does not, however, change the fact that the plain language of section 15–1–18(A) provides that the planning director's issuance of a building permit is characterized as a "decision" rather than a "Final Action." "When examining the plain language [of an ordinance], we must assume that each term included in the ordinance was used advisedly." [12] Accordingly, we must assume that Park City used the term "decision" rather than the defined term "Final Action" purposefully and advisedly in subsection (A) when referring to actions taken by the planning director. Park City could have referred to the actions of the planning director as "Final Actions," just as it did in subsections (B) and (C) when referring to the actions of the Historic Preservation Board and the Planning Commission, but it clearly elected not to do so. We decline to substitute Park City's selected term with a defined term that could have been, but was not, used.

Because the issuance of a building permit is not a "Final Action," the ten-day appeal period of section 15–1–18(E) does not apply.

## II. THE TEN–DAY APPEAL PERIOD OF UTAH CODE SECTION 10–9a–704 APPLIES

¶ 15 Having determined that the ten-day appeal period of the LMC does not apply to appeals from the issuance of a building permit, we must now determine what time period does apply. We determine that the ten-day appeal period under Utah Code section 10–9a–704 applies.

¶ 16 Section 10–9a–704 provides that municipalities "shall enact an ordinance establishing a reasonable time of not less than ten days to appeal to an appeal authority a written decision issued by a land use authority." [13] Based on this statute, Park City should have passed an ordinance establishing a reasonable appeal period for appeals from decisions of the planning director. As discussed in the previous section, however, Park City has failed to establish such a period. The LMC does not have an ordinance addressing the appeal period for an appeal from a "decision" of the planning director.[14]

¶ 17 This omission is remedied, however, by section 10–9a–704(2). "In the absence of an ordinance establishing a reasonable time to appeal, an adversely affected party shall have ten calendar days to appeal to an appeal authority a written decision by a land use authority." [15] A building permit constitutes "a written decision by a land use authority." [16] As such, the appeal period for an appeal of the issuance of a building permit is ten days.

9. Park City Municipal Code § 15–1–18(A)–(C) (emphases added).

10. *See id.* § 15–1–18(E).

11. *Id.* § 15–15–1.90.

12. *Carrier*, 2004 UT 98, ¶ 30, 104 P.3d 1208.

13. Utah Code Ann. § 10–9a–704(1) (2007).

14. Park City, Utah, Municipal Code § 15–1–18(A) ("Any decision by the Planning Director regarding Application of this LMC to a Property may be appealed to the Planning Commission.").

15. Utah Code Ann. § 10–9a–704(2).

16. *See id.* § 10–9a–103(15) (defining "land use authority" as "a person, board, commission, agency, or other body designated by the local legislative body to act upon a land use application").

### III. THE TEN–DAY APPEAL PERIOD BEGINS WHEN THE AFFECTED PARTY HAS ACTUAL OR CONSTRUCTIVE NOTICE OF THE ISSUANCE OF THE PERMIT

#### A. Section 10–9a–704 Does Not Provide a Triggering Event to Begin the Appeal Period

¶ 18 Having determined that the ten-day appeal period of Utah Code section 10–9a–704 applies, we must now determine when the appeal period begins. Section 10–9a–704 is ambiguous on this point. The plain language of the statute provides that "an adversely affected party shall have ten calendar days to appeal to an appeal authority,"[17] but does not provide the triggering event that commences the ten-day period.

¶ 19 A similar issue arose in the case of *Trenkamp v. Township of Burlington.*[18] The statute at issue in *Trenkamp* provided that " '[a]ppeals to the board of adjustment may be taken by any interested party affected by any decision of an administrative officer of the municipality' " and that " 'such appeal shall be taken within 65 days.' "[19] The New Jersey Superior Court held that although the statute set a sixty-five day appeal period, it was "silent . . . as to the event that triggers commencement of this time period."[20] The court noted that the legislature "could have made its intention very clear by providing, for example, that an appeal shall be taken within 65 days *of the date of the decision* " but did not do so.[21] The court also noted that there were other possible commencement dates, such as the date the permit is issued, the date construction begins, or the date the permit is posted.[22]

¶ 20 Like the court in *Trenkamp*, we conclude that section 10–9a–704 does not provide a triggering event for the ten-day appeal period. As such, we must determine what commences the appeal period. Park City argues that the triggering event should be the issuance of the building permit. The Foxes, on the other hand, argue that the appeal period should not begin until the adversely affected party receives some sort of notice. The competing interests of the permit holder and the neighboring landowners are captured in the following quote from the Wisconsin Supreme Court:

> [The permit holder's] interest is to start construction promptly. It wants the appeal period to start at the earliest possible date so that the appeal period ends as soon as possible after the administrative decision is made. [The permit holder's] interest therefore is to have notice of the issuance of the permit occur on the date of the issuance. [The neighbors'] interest is in protecting the use and enjoyment of their property. They are interested in having the appeal period commence when they know of the administrative decision so that they have the opportunity to consider action.[23]

¶ 21 For the reasons discussed below, we join other courts in concluding that the interests of both the permit holder and the neighboring landowners are best balanced by the rule that the appeal period begins when the aggrieved party has actual or constructive knowledge of the issuance of the permit.[24]

---

17. Utah Code Ann. § 10–9a–704(2) (2007).

18. 170 N.J.Super. 251, 406 A.2d 218 (Law Div. 1979).

19. *Id.* at 226 (quoting N.J. Stat. Ann. § 40:55D–72).

20. *Id.* at 227.

21. *Id.* (internal quotation marks omitted).

22. *Id.*

23. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd. of Adjustment,* 131 Wis.2d 101, 388 N.W.2d 593, 599 (1986); *see also Hardy v. Zoning Bd. of Review,* 113 R.I. 375, 321 A.2d 289, 292 (1974) ("Clearly, when a landowner has been granted a permit to make a particular use of his land, he is entitled to know when that decision will become final and no longer be subject to review or reversal by the board. Only in such circumstance may such a landowner feel secure in putting the land to the use granted him by the permit. It is equally true that those who object to the granting of a permit are entitled to know within what period of time they must appeal. . . .").

24. *See Arkae Dev., Inc. v. Zoning Bd. of Adjustment,* 312 N.W.2d 574, 577 (Iowa 1981) ("[C]ourts have almost uniformly held that time

## B. Without Notice, the Right To Appeal Is Meaningless

¶ 22 The Utah Code provides that "any person adversely affected by [a] land use authority's decision administering or interpreting a land use ordinance" has the right to appeal that decision to an appeal authority.[25] A planning director's issuance of a building permit constitutes a "decision administering or interpreting a land use ordinance."[26] Accordingly, any person who is adversely affected by the issuance of a building permit has a statutory right of appeal.

¶ 23 A right to appeal a decision is meaningless, however, if the person possessing the right has no actual or constructive notice of the decision.[27] This is often the case when building permits are issued. The Utah Code does not require a municipality to provide notice to neighboring landowners that a building permit has been issued; thus, neighboring landowners do not receive actual notice of the permit's issuance. Additionally, neighboring landowners often do not receive constructive notice until construction begins,[28] which often does not happen until several weeks or months after the building permit has been issued. Thus, if the appeal period begins when a building permit is issued, by the time neighboring landowners receive any type of notice of the permit's issuance, the statutory time for appeal has passed.[29] In such a situation, the landowners' statutory right to appeal is meaningless.

¶ 24 Starting the appeal period at the time of the permit's issuance, without some sort of notice requirement, effectively strips potentially aggrieved parties of their right to appeal. Indeed, without some sort of notice requirement, a permit holder can completely elude review by simply waiting until eleven days after the permit is issued before beginning construction.[30] A landowner would be forced to check the municipality's records every ten days to see if any building permits had been issued that may have an adverse affect on the landowner's property. Such a rule places too high a burden on landowners in order to exercise their statutory right of appeal.[31] We accordingly reject the proposition that the issuance of the building permit

to file an appeal with a zoning board of adjustment commences when the appealing party is chargeable with notice or knowledge of the decision complained of."); *Brookside Poultry Farms*, 388 N.W.2d at 598 n. 4 ("[S]everal courts have held that the time for appeal commences on the day that the appellant receives notice of the issuance of the permit.").

25. Utah Code Ann. § 10–9a–703.

26. *Id.*

27. *See Munroe v. Zoning Bd. of Appeals*, 261 Conn. 263, 802 A.2d 55, 60 (2002) (" '[W]ithout notice that a decision has been reached, the right to appeal from that decision is meaningless.' " (quoting *Loulis v. Parrott*, 241 Conn. 180, 695 A.2d 1040, 1048 (1997))).

28. *See Arkae Dev.*, 312 N.W.2d at 576–77 (" 'A landowner is often unaware that a permit had been applied for and issued until construction starts on the lot adjoining his property.' " (quoting 3 A. Rathkopf, *The Law of Zoning and Planning* § 37.04[1][a] n. 10 (1981))); *Larsen v. Town of Colton*, 94 Wash.App. 383, 973 P.2d 1066, 1072 (1999) ("When ... the land use decision is a purely ministerial act, the aggrieved person may not have notice or actual knowledge. Indeed, a neighbor's only notice that a building permit has issued may be the beginning of construction.").

29. *See Pansa v. Damiano*, 14 N.Y.2d 356, 251 N.Y.S.2d 665, 200 N.E.2d 563, 565 (1964) (stating that beginning the appeal period at the time of a permit's issuance "might prevent any appeal at all since the neighbors might not learn [until] long afterward of the issuance of a building permit").

30. *See Trenkamp*, 406 A.2d at 227 (stating that "because of the absence of any statutory notification or publication requirement in connection with the issuance of building permits," a permit holder could deliberately wait the statutory time period plus one day before taking any action pursuant to the permit, thereby precluding an appeal by interested persons who had no knowledge of the permit's issuance); *see also Marino v. Town of Cape Elizabeth*, No. CV 94–194, 1994 Me.Super. LEXIS 303, at *2 (Me.Super.Ct. July 29, 1994) ("Frequently, the first suggestion an abutter receives that a permit has been issued is the observation that construction has begun."); *Larsen*, 973 P.2d at 1072 (stating that beginning the appeal period at the time a permit is issued "allow[s] a landowner to avoid any judicial review by obtaining a building permit and waiting [the required number of] days before beginning construction").

31. *See Trenkamp*, 406 A.2d at 223 ("The law does not saddle the public with an obligation requiring the constant scrutiny of voluminous official documents ... in order to protect individual rights.").

begins the running of the statutory appeal period.

▮ ¶ 25 Because the legislature has given a statutory right of appeal to those adversely affected by the issuance of a building permit, we must interpret this right in a way that does not render the right meaningless. And the right to appeal would be rendered meaningless if the appeal period begins when those who may be adversely affected by the decision have no notice of the decision.[32] Thus, we conclude that to give meaning to the statutory right of appeal, neighboring landowners must receive actual or constructive notice of the issuance of a building permit in order for the ten-day appeal period to begin.[33]

### C. The Affected Party Must Have Actual or Constructive Notice of the Issuance of the Building Permit

¶ 26 Having concluded that an adversely affected party must receive notice of a building permit's issuance before the appeal period begins, we must now determine what notice is sufficient to start the appeal period. We adopt the rule adopted by the majority of the states that have addressed this issue, which is that the appeal period begins when the affected party receives actual or constructive notice that the permit has been issued.[34]

▮ ¶ 27 Generally, if a party does not receive actual notice of the issuance of the permit, the party receives constructive notice that a building permit has been issued when construction begins.[35] However, the commencement of construction is not the only way a permit holder can give notice of the permit to neighboring landowners and thereby begin the appeal period. The permit holder may "devise some method of his own for ensuring that members of the public will be chargeable with knowledge of the permit and his building intentions, such as posting a

32. See *Munroe*, 802 A.2d at 60 ("[O]ne allegedly aggrieved by the decision of a building inspector who has neither actual knowledge of that decision nor who, under the circumstances of a given case could be reasonably charged with such knowledge ... is, for all practical purposes, denied the right of appeal ... if he is bound by a regulation of the board that an appeal must be taken within [the statutorily mandated number of] days of the decision.").

33. See *id.* (interpreting a similar statute and determining that because it "provide[d] a meaningful right to appeal for all persons aggrieved by the actions of zoning enforcement officials," the appeal period contained in the statute did not begin until the aggrieved party had "notice of the action from which appeal is sought").

34. See *Arkae Dev.*, 312 N.W.2d at 577 ("[C]ourts have almost uniformly held that time to file an appeal with a zoning board of adjustment commences when the appealing party is chargeable with notice or knowledge of the decision complained of."); *see also id.* ("[T]he time for appeal should run from the earliest of the date (a) the appealing party had actual knowledge of the decision appealed from, (b) the appealing party was chargeable with knowledge of that decision, or (c) notice of the decision is given in a reasonable, specified manner." (footnote omitted)); *State ex rel. Green's Bottom Sportsmen, Inc. v. St. Charles County Bd. of Adjustment*, 553 S.W.2d 721, 725 (Mo.Ct.App.1977) ("[T]ime to file an appeal commences to run when notice, actual or constructive, is given the party affected by the order to be appealed."); *Tausanovitch v. Town of*

*Lyme*, 143 N.H. 144, 722 A.2d 914, 916 (1998) ("Generally, the time for an appeal from the administrative officer's decision begins to run when the appealing party knows or should have known about the decision."); *Trenkamp*, 406 A.2d at 227 ("[A] proper regard for the interests of [affected parties] mandates that the time for appeal begins to run from the date an interested person knew or should have known of the permit's issuance."); *Cave v. Fredonia*, 49 A.D.2d 228, 373 N.Y.S.2d 932, 935 (1975) ("[T]he commencement of the [appeal] period runs from the date that [a] grievant becomes chargeable with notice of issuance of the permit complained of...."); *Larsen*, 973 P.2d at 1072 ("Actual or constructive knowledge of the building permit ... should be the triggering event for a reasonable limitation period." (footnote omitted)).

35. See *Arkae Dev.*, 312 N.W.2d at 577 ("[W]hen construction begins pursuant to a permit and this activity is visible to the public, an objector is chargeable with knowledge of the permit even though he himself does not learn of the construction or the permit until later."); *see also Munroe*, 802 A.2d at 61 (stating that neighbors received notice of a landowner's building permit to construct a second story addition on garage when he began demolition of his garage roof); *Tausanovitch*, 722 A.2d at 916 (stating that neighbors "had actual or constructive notice" of the issuance of a building permit when construction began); *Trenkamp*, 406 A.2d at 226 ("Actual knowledge, or reason to know of [the building permit's] issuance, was had ... when construction began.").

visible and informative sign on the property prior to construction." [36]

¶ 28 "[K]nowledge or notice of a 'decision' refers not only to the administrative decision itself (e.g., issuance of a building permit) but also to the facts constituting the basis for objecting to that decision...." [37] Thus, a party must not only have notice that a building permit has been issued, but must also have knowledge of the facts that form the basis of the party's objection to the permit before the appeal period begins. [38] Such facts are generally contained in the permit or permit application on file with the municipality. Once a party has actual or constructive notice that a permit has been issued, the party is chargeable with knowledge of the information contained in the permit and the permit application. [39] Accordingly, if the facts that form the basis for the party's appeal can be ascertained by a review of the permit application, the party is charged with knowledge of those facts once he or she has actual or constructive notice of the permit's issuance. If, on the other hand, the permit application does not contain the facts, and the party is not charged with knowledge of the facts, then the appeal period does not begin until the party receives knowledge of those facts from some other source. [40]

¶ 29 We note that the rule we adopt is a general rule and that there may be exceptional circumstances that may allow an affected party to bring an appeal even after the appeal period has run. Such circumstances may include fraud on the part of the permit applicant or bribery of municipal officials to secure the building permit. These types of actions so severely undermine the permit process that the appeal period would not begin until the affected parties have notice of them.

¶ 30 In sum, we adopt the rule that the appeal period begins when an affected party receives actual or constructive notice that the building permit has been issued.

## IV. THE TEN–DAY APPEAL PERIOD DOES NOT BEGIN WHEN THE AFFECTED PARTY RECEIVES NOTICE OF THE ALLEGED VIOLATION

¶ 31 Although we adopt the rule that the appeal period begins when the aggrieved party receives actual or constructive notice that a building permit has been issued, we think it necessary to explain why we reject the rule advanced by the Foxes. The Foxes contend that the appeal period should not begin until an affected party receives actual notice of the alleged violation. Under the Foxes' proposed rule, the appeal period began when the buildings on the Subject Property reached a height that alerted them to a possible height violation.

¶ 32 As previously mentioned, this case requires us to balance the competing interests of the permit holder and of the neighboring landowners. The building permit holder "is entitled to know when [the municipality's decision to issue a building permit]

---

36. *Arkae Dev.*, 312 N.W.2d at 578.

37. *Id.* at 577 (citations omitted).

38. *See id.* ("[T]he [appeal] period runs from the date that the person appealing had actual knowledge or was chargeable with knowledge of the decision appealed from and of the facts forming the basis of his objection.").

39. *Bunse v. Schmeling*, 2001 WL 1502700, at *1, 2001 Iowa App. LEXIS 713, No. 1–460/00–1501, at *3, *4 (Iowa Ct.App. Nov. 28, 2001) (holding that because a party observed a neighboring landowner building a garage, the party "possessed timely knowledge sufficient to place him under a duty to make inquiry and ascertain all the relevant facts").

40. *See Green's Bottom Sportsmen*, 553 S.W.2d at 724 (holding that neighboring landowners did not receive notice that newly constructed buildings would be used as a gun club—which was not a permitted use—until after construction had been completed and shooting began because the building permit application stated that a "sportsman club" was being constructed, which would not "lead a reasonably intelligent person to believe" that a gun club was actually being built); *Cohen v. Duncan*, No.2002–599, 2004 WL 1351155, at *12, 2004 R.I.Super. LEXIS 103, at *40 (R.I.Super. Ct. June 9, 2004) (holding that an aggrieved party was not charged with knowledge of disputed improvements because "even a careful inspection of the plans filed with the application for that permit" could not have uncovered that the disputed improvements were going to be made).

will become final and no longer be subject to review or reversal."[41] Knowing when the decision is final and no longer subject to review allows the permit holder to rely on the building permit and to "feel secure in putting the land to the use granted him by the permit."[42] On the other hand, neighboring landowners have an interest "in protecting the use and enjoyment of their property."[43] Accordingly, they have an interest in appealing a municipality's decision to issue a building permit when they believe that the decision is erroneous and that they are adversely affected by the decision.

¶ 33 These competing interests are not properly weighed under a rule that the appeal period does not begin until there is actual notice of the alleged violation. Such a rule weighs too heavily in favor of the neighboring landowners and gives the permit holder no finality or assurance. For example, assume a developer submits a building permit application. During the municipality's review of the application, a question arises regarding the proper application of a zoning ordinance. The municipality reviews the ordinance and interprets it in a way that allows the structure to be built as proposed in the application. Accordingly, a building permit is issued. The developer, who may not even be aware that a question arose during the permit review process, then expends substantial sums of money constructing the building. As construction is nearing completion, a neighboring landowner notices that the building looks too tall. The neighbor then goes down to city hall, reviews the permit application, and discovers that under an alternative interpretation of the ordinance, the building exceeds the height restriction. Allowing the neighbor to appeal the issuance of the building permit at this point would be unfair because the neighbor had all of the information necessary to mount an appeal—notice of the permit's issuance and the information contained in the permit

application—months earlier, before the developer spent a substantial amount of money in reliance on the building permit.

¶ 34 We therefore conclude that the better rule is the rule we adopt in this case—that the appeal period begins when the neighboring landowners receive actual or constructive notice of the permit's issuance. This rule places on the permit holder the responsibility of providing notice of the permit's issuance, whether it be by beginning construction or by some other means. And, once notice is given, the rule places on the neighboring landowners the responsibility of reviewing the available information to determine if they want to appeal the permit's issuance. This rule balances the interests of the parties by assuring that the neighboring landowners have notice of the permit and an opportunity to appeal, while giving the permit holder assurance of the permit's finality and reliability.

¶ 35 We also reject the Foxes' proposed rule because it conflicts with another well-established rule in Utah: the doctrine of zoning estoppel. This doctrine

> estops a government entity from exercising its zoning powers to prohibit a proposed land use when a property owner, relying reasonably and in good faith on some governmental act or omission, has made a substantial change in position or incurred such extensive obligations or expenses that it would be highly inequitable to deprive the owner of his right to complete his proposed development.[44]

To invoke the doctrine of zoning estoppel, the municipality "must have committed an act or omission upon which the developer could rely in good faith in making substantial changes in position or incurring extensive expenses. The action upon which the developer claims reliance must be of a clear, definite and affirmative nature."[45]

41. *Hardy v. Zoning Bd. of Review,* 113 R.I. 375, 321 A.2d 289, 292 (1974).

42. *Id.*

43. *State ex rel. Brookside Poultry Farms, Inc. v. Jefferson County Bd. of Adjustment,* 131 Wis.2d 101, 388 N.W.2d 593, 599 (1986).

44. *W. Land Equities, Inc. v. City of Logan,* 617 P.2d 388, 391 (Utah 1980).

45. *Utah County v. Young,* 615 P.2d 1265, 1267 (Utah 1980).

¶ 36 A building permit that is applied for and issued in good faith is clearly an affirmative action of the municipality upon which a developer should be able to rely. If a building permit is issued based on a municipality's interpretation of the applicable zoning ordinances, the municipality would be estopped from later asserting a different interpretation and attempting to revoke the permit after the permit holder has incurred extensive expense in reliance on the permit.

¶ 37 Using the hypothetical above, the municipality would most likely be estopped from revoking the permit, even if the neighbor was allowed to appeal the issuance of the building permit when the building reached a height that alerted the neighbor to the potential height violation. The municipality would be estopped because the developer reasonably and in good faith incurred extensive expenses in reliance on the building permit, and it would be inequitable to deny the developer the right to finish construction of the building pursuant to the permit.

¶ 38 In summary, the Foxes' proposed rule that the appeal period begins when the aggrieved party receives actual notice of the violation would lead to a situation where the party has a right (the right to appeal the permit's issuance) without a remedy (the power of the city to revoke the permit). Because it is illogical to adopt a rule that provides a right without a remedy, we reject the Foxes' proposed rule.

## V. THE FOXES' NOTICE OF APPEAL WAS UNTIMELY

¶ 39 Having articulated the rule regarding when the ten-day appeal period begins, we now apply the rule to the facts of this case and determine that the Foxes' notice of appeal was untimely.

¶ 40 Construction on the Subject Property began in the fall of 2005. This construction was readily visible to surrounding landown-

ers. Indeed, Mr. Fox testified in a deposition that he saw construction activities taking place on the Subject Property in the fall of 2005. Although the exact date construction began is not entirely clear from the record,[46] there is no arguable dispute that the Foxes' notice of appeal was filed more than ten days after construction began.[47]

¶ 41 Additionally, the facts forming the basis for the Foxes' appeal were contained in the permit application. Indeed, Mr. Fox testified in his deposition that "from my review of the plans [on file with Park City], it appeared that the buildings were going to exceed Park City's height restriction."

¶ 42 Thus, the Foxes had notice that a building permit had been issued in the fall of 2005 when construction began. And the Foxes were charged with notice of the facts forming the basis for their appeal because they were contained in the permit application. Accordingly, the ten-day appeal period began when construction began, and the Foxes did not file their appeal within this time limit. Their notice of appeal was therefore untimely.

## CONCLUSION

¶ 43 The district court correctly dismissed the Foxes' petition for review because their notice of appeal was untimely. Affirmed.

¶ 44 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Judge GREENWOOD concur in Justice PARRISH'S opinion.

¶ 45 Justice NEHRING does not participate herein; Utah Court of Appeals Judge PAMELA T. GREENWOOD sat.

---

46. Although the exact date construction began is not apparent from the record, we do know that it was prior to September 13, 2005, because the footings were inspected on that date.

47. On appeal to this court, Park City contends that the Foxes' January 19 notice of appeal was incomplete because it was not accompanied by

the required filing fee. Park City argues that the notice of appeal was not complete until the filing fee was paid on May 11 and, therefore, asks us to use May 11 as the effective date of the notice of appeal. We need not address Park City's argument because the Foxes' notice of appeal was untimely even if we use January 19 as the effective date.