258 P.3d 619 (2011)
2011 UT App 198
REPUBLIC OUTDOOR ADVERTISING, LC, Plaintiff and Appellant,
v.
UTAH DEPARTMENT OF TRANSPORTATION, DIVISION II; R.O.A. General, Inc.; and South Salt Lake City, Defendants and Appellees.
No. 20081058-CA.
Court of Appeals of Utah.
June 23, 2011.
*621 Steven A. Wuthrich, Montpelier, Idaho, for Appellant.
Mark L. Shurtleff, Brent A. Burnett, Paul H. Roberts, Leslie Van Frank, and Bradley M. Strassberg, Salt Lake City, for Appellees.
Before Judges DAVIS, THORNE, and ROTH.

OPINION
ROTH, Judge:
¶ 1 Republic Outdoor Advertising, LC (Republic) appeals the district court's grant of summary judgment to R.O.A. General, Inc. (Reagan), the Utah Department of Transportation (UDOT), and South Salt Lake City (the City). We affirm.

BACKGROUND
¶ 2 This case arises from administrative proceedings before UDOT and the City involving permits for competing billboards along the I-15 corridor in South Salt Lake City.[1]
¶ 3 In February 1998, Reagan filed an application with UDOT for a permit to remove an existing billboardthe Swanson *622 billboardand build another billboardthe Lindal billboard-about 300 feet away. UDOT initially denied the Lindal permit, and Reagan pursued the matter administratively, eventually appealing to the district court. In 2000, however, Reagan agreed to dismissal without prejudice of its district court appeal in order to negotiate a settlement with UDOT. No further activity occurred respecting the Lindal permit until 2002. In the meantime, however, the property that was the proposed location for the Lindal billboard was subdivided, and Reagan released its billboard lease interest in the particular parcel on which the Lindal billboard was to be built. In addition, the permit that had been issued to Reagan by the City for the Lindal billboard lapsed in April 2002.[2]
¶ 4 In May 2002, Republic applied to UDOT for a permit to erect a billboardthe Deck Hockey billboard.[3] However, the Deck Hockey billboard and the Lindal billboard conflicted: the proposed locations for the two billboards were within 500 feet of one another, and billboards constructed along I-15 must be separated by at least 500 feet. See Utah Code Ann. § 72-7-505(3)(a) (2008) (stating that signs "may not be closer than 500 feet to an existing off-premise sign" when "adjacent to an interstate highway"). UDOT further applies a first-in-time, first-in-right rule to billboard permit applications. Thus, the Lindal permit preceded the Deck Hockey permit and would be considered first.
¶ 5 As early as May 2002 but no later than November 2002, Republic became aware of the conflict between its Deck Hockey billboard and Reagan's Lindal billboard and that UDOT was considering the Deck Hockey permit behind the Lindal permit. Republic was thus aware that approval of the Lindal permit would mean denial of the Deck Hockey permit. During this same time period, Republic also believed that the permit the City had issued to Reagan for the Lindal billboard had lapsed, and Republic believed that the absence of a permit from the City could potentially preclude UDOT from approving Reagan's application for the Lindal permit. When Republic contacted UDOT about the competing permit applications, however, Republic was told that private negotiations were ongoing between UDOT and Reagan regarding the Lindal permit that were basically "a done deal." Thereafter, Republic took no action to intervene in the Lindal permit proceeding.
¶ 6 In January 2003, UDOT approved Reagan's Lindal permit. And in July 2003, UDOT denied Republic's Deck Hockey permit on the basis that the proposed location for the Deck Hockey billboard was within 500 feet of the Lindal billboard. Following UDOT's approval of the Lindal permit, Reagan built the Lindal billboard but not in the location specified on the permit application. Rather, because the property that had been the proposed location for the Lindal billboard had been subdivided, Reagan built the Lindal billboard ninety feet away from the Swanson billboard rather than the 300 feet originally proposed. The dimensions of the Lindal billboard as built were also different than the dimensions that were originally specified on the permit application. The permit application was not amended to reflect the change in location; the permit application was, however, amended to reflect the change in dimensions. Further, the Swanson billboard was never removed.[4]
*623 ¶ 7 After UDOT denied the Deck Hockey permit, Republic filed a timely administrative appeal. Republic, however, did not challenge the basis of UDOT's denial of its Deck Hockey permitthat the proposed location of the Deck Hockey billboard was impermissibly within 500 feet of Reagan's Lindal billboard. Rather, Republic challenged the validity of the Lindal permit itself.[5] After failing to obtain relief through the administrative process, Republic appealed to the district court in March 2004.
¶ 8 In the fall of 2005, during the course of Republic's district court appeal, Reagan applied to UDOT and the City for permits to build another billboardthe Wilderness billboard. The proposed location of the Wilderness billboard was at least 500 feet away from the Lindal billboard but was within 500 feet of the proposed location for Republic's Deck Hockey billboard. The City and UDOT granted Reagan the Wilderness permits in September and October 2005, respectively. The Wilderness billboard was erected in January 2006, and Reagan subsequently removed the Lindal billboard. In February 2006, Republic requested from the City a copy of Reagan's application for the Wilderness permit.
¶ 9 After the Wilderness billboard was built, Republic applied to the City for a permit for another billboardthe Network billboard. The Network billboard, however, was within 500 feet of the newly-built Wilderness billboard, and the City denied the Network permit in April 2006 on that basis. Republic filed an administrative appeal of the decision. But Republic did not challenge the City's basis for denying the Network permitthat the proposed location for the Network billboard was impermissibly within 500 feet of the Wilderness billboard. Rather, Republic argued that Reagan's Wilderness permits should never have been granted because the Wilderness billboard was within 500 feet of the location Republic had proposed for the Deck Hockey billboard.[6] Republic's main contention in challenging the Wilderness billboard was that if its district court appeal of UDOT's denial of the Deck Hockey permit succeeded, then the Wilderness billboard could not remain in place because the Deck Hockey billboard was first-in-time and the two billboards would be impermissibly within 500 feet of one another.
¶ 10 Meanwhile, in October 2006, during Republic's appeal of UDOT's denial of the Deck Hockey permit, the district court ordered Republic to join Reagan as a party because Republic's claims could potentially affect the validity of Reagan's Lindal permit. In joining Reagan as a party, however, Republic also amended its complaint to challenge not only the validity of the Lindal permit but also to challenge the validity of Reagan's Wilderness permits issued by UDOT and the City. Republic also joined the City as a party with respect to its Wilderness permit claims.
¶ 11 Reagan, UDOT, and the City moved for summary judgment, which the district court granted, concluding that it lacked subject matter jurisdiction to consider Republic's challenges to the validity of the Lindal permit and the Wilderness permits because Republic had failed to exhaust its administrative *624 remedies. Having concluded that it lacked subject matter jurisdiction to consider the validity of the Lindal permit, the district court also granted summary judgment to UDOT, concluding that UDOT had properly denied the Deck Hockey permit on the basis that the proposed location for the Deck Hockey billboard was within 500 feet of the Lindal billboard. Republic appeals.

ISSUES AND STANDARDS OF REVIEW
¶ 12 Republic challenges the district court's grant of summary judgment. In granting summary judgment, the district court concluded that it did not have subject matter jurisdiction to consider Republic's claims to the extent they concerned the validity of the Lindal permit issued by UDOT and the Wilderness permits issued by UDOT and the City because Republic had failed to exhaust administrative remedies. A district court's grant of summary judgment is reviewed for correctness, viewing all facts and reasonable inferences in favor of the nonmoving party. See Western Water, LLC v. Olds, 2008 UT 18, ¶ 14, 184 P.3d 578. Similarly, whether a court lacks subject matter jurisdiction due to a party's failure to exhaust administrative remedies is a question of law, reviewed for correctness.[7]See id. ¶¶ 15-18; Decker v. Rolfe, 2008 UT App 70, ¶¶ 7-8, 10, 180 P.3d 778.
¶ 13 Republic also argues that the district court failed to properly conduct a trial de novo of UDOT's denial of the Deck Hockey permit because it granted summary judgment to UDOT based only on whether the proposed location for the Deck Hockey billboard was within 500 feet of the Lindal billboard and refused to consider evidence relating to the validity of the Lindal permit. Whether the district court appropriately granted summary judgment on de novo review is a question of law, reviewed for correctness. See Archer v. Board of State Lands & Forestry, 907 P.2d 1142, 1145 (Utah 1995) ("[W]e examine, without deference, the district court's legal conclusions and determine whether, on de novo review, the district court properly granted summary judgment.").

ANALYSIS

I. Summary Judgment
¶ 14 Summary judgment is proper if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Summary judgment is an appropriate mechanism to decide whether a court has subject matter jurisdiction, see Holladay Towne Ctr., LLC v. Holladay City, 2008 UT App 301, ¶¶ 2, 10, 192 P.3d 302 (mem.), which is "the authority and competency of [a] court to decide [a] case," Western Water, 2008 UT 18, ¶¶ 16-17, 184 P.3d 578.
¶ 15 District courts have jurisdiction to review "all final agency actions resulting from informal adjudicative proceedings." Utah Code Ann. § 63G-4-402(1)(a) (2008);[8]see also Western Water, 2008 UT 18, ¶ 17, 184 P.3d 578 ("District courts have authority to review de novo any ... informal administrative proceeding."). However, "[a] party may seek judicial review [of a final agency action] only after exhausting all administrative remedies available...." Utah Code Ann. § 63G-4-401(2); accord Utah Admin. Code R907-1-15(1) ("Persons must exhaust their administrative remedies in accordance with [s]ection 63G-4-401, prior to seeking judicial review."). "The basic purpose underlying the doctrine of exhaustion of administrative remedies is to allow an administrative agency to perform functions within its special competenceto make a factual record, to apply its *625 expertise, and to correct its own errors so as to moot judicial controversies." Western Water, 2008 UT 18, ¶ 18, 184 P.3d 578 (internal quotation marks omitted). And so, "[a]s a general rule, parties must exhaust applicable administrative remedies as a prerequisite to seeking judicial review." Nebeker v. Utah State Tax Comm'n, 2001 UT 74, ¶ 14, 34 P.3d 180 (internal quotation marks omitted). Thus, a district court has jurisdiction to review an administrative decision only if the parties have exhausted all available administrative remedies. See Western Water, 2008 UT 18, ¶ 18, 184 P.3d 578 ("Authority for judicial review arises only after the parties have exhausted their administrative remedies....").
¶ 16 Here, Republic argues that the district court erred in concluding that it failed to exhaust the administrative remedies available to challenge the validity of the Lindal permit issued by UDOT and the Wilderness permits issued by UDOT and the City. We will first consider the administrative remedies Republic was required to exhaust so as to challenge the validity of the Lindal and Wilderness permits. We will then address Republic's argument that, if it failed to exhaust administrative remedies, it should be excused from doing so.

A. The Lindal Permit
¶ 17 In granting summary judgment on Republic's claims against UDOT regarding the Lindal permit, the district court concluded that Republic should have directly intervened in the Lindal permit proceeding rather than collaterally challenging that permit's validity in the Deck Hockey permit proceeding, where Reagan was not a party. Republic, however, argues that it could not have intervened in the Lindal permit proceeding for several reasons, each of which we will address in turn.
¶ 18 Any person whose interests "may be substantially affected" may intervene in a formal administrative proceeding. See Utah Code Ann. § 63G-4-207(1), (2)(a) ("Any person not a party may file a signed, written petition to intervene in a formal [administrative] proceeding with the agency" if "the petitioner's legal interests may be substantially affected by the formal [administrative] proceeding."). But intervention in an informal administrative proceeding is prohibited. See id. § 63G-4-203(1)(g) (stating that "[i]ntervention is prohibited" in an informal administrative proceeding, with limited exceptions not applicable here). Nonetheless, an informal administrative proceeding may be converted into a formal proceeding at any time before a final order is issued, so as to allow an interested party to intervene. See id. § 63G-4-202(3) ("[B]efore a final order is issued in any adjudicative proceeding, the presiding officer may convert a formal adjudicative proceeding to an informal adjudicative proceeding, or an informal adjudicative proceeding to a formal adjudicative proceeding if ... conversion of the proceeding is in the public interest and conversion of the proceeding does not unfairly prejudice the rights of any party."); accord Utah Admin. Code R907-1-1 ("All applications ... shall be processed as informal adjudicative proceedings... unless ... either party requests conversion to a formal proceeding and the presiding officer decides that conversion is in the public interest and does not prejudice the rights of any party.").
¶ 19 When Reagan appealed UDOT's initial denial of the Lindal permit between 1998 and 2000, the proceeding was designated by order as formal. That designation was never changed, and that order was never revoked. But when Republic applied to UDOT for the Deck Hockey permit in 2002 and discovered the conflict between Reagan's Lindal billboard and its Deck Hockey billboard, the administrative regulations provided that "[a]ll applications ... be processed as informal adjudicative proceedings," unless otherwise designated. See Utah Admin. Code R907-1-1. Republic asserts that, based on this regulation, even though it was aware of Reagan's application for the Lindal permit, it assumed that the Lindal permit proceeding was informal. Republic thus argues that because of the administrative regulations' presumption of informality, it had no reason to even inquire whether the Lindal permit proceeding was formal and therefore had no way of knowing that it could intervene. Republic further argues that it had no way of discovering *626 whether the Lindal permit proceeding had been designated as formal because "[t]ransportation files are not like [c]ourt records [where] you can just go in and look at [them, but] the files are maintained by the permit officer."
¶ 20 This argument assumes much. It is apparent that the Lindal permit proceeding was, in fact, formal. But even if Republic assumed that the Lindal permit proceeding was informal, we can see no reasonable basis for Republic to simply assume that it was powerless to intervene and could do nothing. For one thing, although the applicable regulation provides that permit applications be processed informally, it contemplates that the proceeding can be made formal. It therefore does not seem reasonable for Republic to simply assume that the Lindal permit proceeding was informal and make no inquiry whatsoever to check that assumption. For instance, Republic could have requested information on the status of the Lindal permit proceeding. If that information was not made available, Republic could have discovered that the Lindal permit proceedings had been designated as formal by requesting to inspect the documents relating to Reagan's application for the Lindal permit under the Government Records Access and Management Act (GRAMA), see generally Utah Code Ann. § 63G-2-201(1) (2008) ("Every person has the right to inspect a public record...."). There is no indication, however, that Republic took action to ascertain the status of the proceeding. Taking a more direct approach, even having assumed that the Lindal permit proceeding was informal, Republic could have requested that the Lindal permit proceeding be converted into a formal proceeding to allow intervention. See id. § 63G-4-202(3) ("Any time before a final order is issued in any [administrative] proceeding, the presiding officer may convert ... an informal ... proceeding... to a formal ... proceeding...."); accord Utah Admin. Code R907-1-1 ("All applications ... shall be processed as informal adjudicative proceedings ... unless... either party requests conversion to a formal proceeding and the presiding officer decides that conversion is in the public interest and does not prejudice the rights of any party."). And in the process of seeking such a conversion, Republic would certainly have discovered that the Lindal permit proceeding had already been designated as formal. Further, given the conflict between the Deck Hockey billboard and the Lindal billboard, Republic could have requested that the applications be considered together in a single adjudicative proceeding. See Utah Code Ann. § 63G-4-201(7) ("If the purpose of the adjudicative proceeding is to award a license or other privilege as to which there are multiple competing applicants, the agency may, by rule or order, conduct a single adjudicative proceeding to determine the award of that license or privilege.").[9]
¶ 21 Republic next argues that even if it could have intervened in the Lindal permit proceeding, it was unaware at the time of facts important to its challenge to the validity of the Lindal permitfacts that it did not discover until after UDOT had approved the Lindal permit.[10] In response, UDOT and Reagan assert that, even after the Lindal permit was issued, once Republic became aware of those facts, it could have filed a "request for agency action" asking that UDOT reconsider the Lindal permit. See id. *627 § 63G-4-201(1)(b) (providing that a person other than the agency may file a request for agency action in order to commence adjudicative proceedings); see also id. § 63G-4-201(3) (providing requirements to file a request for agency action). Republic counters that it did file just such a request for agency action in the form of its administrative appeal of UDOT's denial of the Deck Hockey permit. In that appeal, Republic specifically challenged the validity of Reagan's Lindal permit, having by that time become aware of the facts supporting its claim that the Lindal permit should be invalidated. See supra ¶ 21 n. 9. Reagan, however, responds that even if that aspect of Republic's administrative appeal amounted to a request for agency action challenging the validity of the Lindal permit, in order to comply with applicable administrative procedures and elementary due process requirements, Republic was also required to notify anyone who would have "a direct interest in the requested agency action," namely Reagan. See id. § 63G-4-201(3)(b) ("The person requesting agency action shall file the request with the agency and shall mail a copy to each person known to have a direct interest in the requested agency action."). Republic, however, never notified Reagan of its administrative challenge to the Lindal billboard permit and, incidentally, joined Reagan as a party to this case only after being ordered to do so by the district court in October 2006.
¶ 22 And that is the crux of the problem here: While Republic's challenge to Reagan's Lindal permit was an integral part of its challenge to UDOT's denial of its Deck Hockey permit, throughout the underlying administrative proceeding, Republic attempted to accomplish these interrelated goals of obtaining its own permit and defeating Reagan's in a proceeding to which Reagan was not a party.
¶ 23 Notice to those directly affected by an administrative proceeding is not only required by statute, see id., but comports with a broader requirement of due process that "affected parties must receive adequate notice," see V-1 Oil Co. v. Department of Envtl. Quality, 939 P.2d 1192, 1197 (Utah 1997) (concluding that when administrative proceedings are adjudicative in nature, stricter due process requirements apply, "[t]he most fundamental [of which] ... is the opportunity to be heard at a meaningful time and in a meaningful manner," which requires that "affected parties must receive adequate notice" (internal quotation marks omitted)); see also Beehive Tel. Co. v. Public Serv. Comm'n of Utah, 2004 UT 18, ¶ 33, 89 P.3d 131 ("There is no question that fair notice is a central element of due process."); Anderson v. Public Serv. Comm'n of Utah, 839 P.2d 822, 825 (Utah 1992) ("[T]o comport with due process, notice must be reasonably calculated under all circumstances to give interested parties an opportunity to protect their interests." (internal quotation marks omitted)). Several administrative remedies were available to Republic that would have allowed it to challenge the validity of Reagan's Lindal permit in a proceeding in which Reagan was either involved or given sufficient notice to be able to protect its interests. As earlier discussed, these remedies include intervening in the Lindal permit proceeding, see Utah Code Ann. § 63G-4-207(1), (2)(a); providing notice to Reagan of Republic's request for agency action, challenging the validity of the Lindal permit in the Deck Hockey permit proceeding, see id. § 63G-4-201(1)(b), (3)(b); or requesting that UDOT combine the two proceedings involving the Deck Hockey permit and the Lindal permit into a "single adjudicative proceeding," see id. § 63G-4-201(7). Republic, however, did none of these things and instead attempted to challenge the validity of Reagan's Lindal permit in a proceeding in which Reagan was not a party and without providing notice. Such a collateral attack on the Lindal permit did not give Reagan the opportunity to protect its interests or defend against allegations of wrong-doing and, thus, contravenes due process requirements for administrative proceedings.
¶ 24 Ultimately, we do not need to decide which of the available administrative remedies Republic should have utilized in pursuing its challenge to the validity of the Lindal permit or which was best suited to the circumstances. We conclude that remedies were, in fact, available to challenge the validity of Reagan's Lindal permit in a proceeding *628 in which Reagan could defend its interests. Republic, however, did not utilize any of the available administrative remedies and, therefore, failed to exhaust its administrative remedies as the law requires. Accordingly, the district court correctly concluded that it lacked subject matter jurisdiction to review Republic's claims to the extent that they challenged the validity of Reagan's Lindal permit and its grant of summary judgment was appropriate.

B. The Wilderness Permits
¶ 25 Republic next argues that the district court erroneously granted summary judgment on Republic's challenge to the validity of the Wilderness permits. As it had with respect to the Lindal permit claims, the district court concluded that it did not have subject matter jurisdiction to consider the validity of the Wilderness permits because Republic had failed to exhaust administrative remedies. Both the City and UDOT issued permits for the Wilderness billboard, and we will address the administrative remedies Republic was required to exhaust to challenge each of those permits in turn.[11]

1. The City Permit
¶ 26 In September 2005, Reagan applied for and received a permit from the City to erect the Wilderness billboard. The Wilderness billboard was built in January 2006 and was located within 500 feet of the proposed location for the Deck Hockey billboard. In February 2006, Republic made a request to the City under GRAMA for a copy of Reagan's application for the Wilderness billboard permit.
¶ 27 City ordinance provides that "any person aggrieved ... by any decision of the administrative officer charged with the duty of enforcing the[se] provisions" may appeal that decision to the board of adjustment. See South Salt Lake City Ord. § 17.02.030(K)(1) (2006). This right to appeal extends to decisions relating to the issuance of permits for signs or billboards. See id. § 17.16.380. "Such [an] appeal shall be made within ten days after notice of any such decision." See id. § 17.02.030(K)(2)(a). And the ten-day appeal period begins to run upon receipt of actual or constructive notice of issuance of the permit. See Fox v. Park City, 2008 UT 85, ¶ 21, 200 P.3d 182 (concluding that the period to appeal a land use decision, such as the issuance of a building permit, "begins when the aggrieved party has actual or constructive knowledge of the issuance of the permit"); see also id. ¶ 24 ("Starting the appeal period at the time of [a] permit's issuance, without some sort of notice requirement, effectively strips potentially aggrieved parties of their right to appeal.... *629 [So w]e ... reject the proposition that the issuance of the building permit begins the running of the ... appeal period.").
¶ 28 Because of the competing interests between Reagan's Wilderness billboard and Republic's Deck Hockey billboard, Republic is clearly an "aggrieved" person who could challenge the City's decision to issue the Wilderness permit: the City's decision to issue the Wilderness permit conflicts with the Deck Hockey billboard because the two billboards would be impermissibly within 500 feet of one another. That Republic's interest is one that would render it "aggrieved" by the City's decision to approve the Wilderness permit is also demonstrated by Republic's own contemporaneous statements that it "clearly has standing to challenge the issuance of the [City] permit, as well as the UDOT permit" for the Wilderness billboard. See supra ¶ 25 n. 11.
¶ 29 Further, Republic had constructive notice that the City had granted a permit for construction of the Wilderness billboard when that billboard was built in January 2006. See Fox, 2008 UT 85, ¶ 26, 200 P.3d 182 (providing that the aggrieved party receives "constructive notice that a building permit has been issued when construction begins"). And without question, Republic had actual notice that the City had granted a permit for the Wilderness billboard no later than February 2006, when it requested a copy of Reagan's permit application for the Wilderness billboard from the City. From the time Republic received constructive notice in January 2006 that the Wilderness permit had been approved, it had ten days to appeal the issuance of that permit. See South Salt Lake City Ord. § 17.02.030(K)(1)-(2)(a). Republic, however, took no action regarding the Wilderness billboard until February 2006 when it requested from the City a copy of Reagan's permit application for the Wilderness billboard. And even after receiving actual notice of the Wilderness permit in February 2006, Republic failed to challenge the validity of the Wilderness permit until April 2006, when it applied for and appealed the City's denial of the Network permit. Republic's challenge to the Wilderness permit, thus, was filed well beyond the applicable ten-day appeal period.
¶ 30 By failing to appeal the City's decision to issue the Wilderness permit within ten days of receiving constructive or actual notice, Republic failed to exhaust its administrative remedies. Accordingly, the district court correctly concluded that Republic's failure to exhaust its administrative remedies left the court without subject matter jurisdiction to review Republic's challenge to the validity of Reagan's Wilderness permit.[12]

2. The UDOT Permit
¶ 31 In granting summary judgment on Republic's challenge to the validity of the Wilderness permit issued by UDOT, the district court relied upon Utah Code section 63G-4-201(4) and rule 907-1-3 of the Utah Administrative Code to reason that Republic had thirty days from the time it received notice that UDOT had approved the Wilderness permit to challenge the issuance of that *630 permit. Reagan applied for and received the Wilderness permit from UDOT in October 2005, and the Wilderness billboard was built in January 2006. The district court, thus, determined that Republic undisputedly had constructive notice that UDOT had approved the Wilderness permit in January 2006, see Fox, 2008 UT 85, ¶¶ 21, 26, 200 P.3d 182 (concluding that the period to appeal a land use decision, such as the issuance of a building permit, "begins when the aggrieved party has actual or constructive knowledge of the issuance of the permit" and that the aggrieved party receives "constructive notice that a building permit has been issued when construction begins"), yet Republic made no challenge to UDOT's issuance of the Wilderness permit within thirty days of that time. Accordingly, the district court concluded that Republic had failed to exhaust its administrative remedies in challenging the validity of the Wilderness permit issued by UDOT.
¶ 32 Republic has not contested this particular basis for the district court's decision to grant summary judgment. Rather, Republic has focused its argument on an alternative basis for the district court's grant of summary judgment. In October 2006, after the district court ordered Republic to join Reagan as a party to its appeal of UDOT's denial of the Deck Hockey permit wherein it challenged the validity of Reagan's Lindal permit, Republic not only joined Reagan as a party but also added its claims challenging the validity of the Wilderness permits. At that time, Republic also sent a letter to UDOT challenging the validity of the Wilderness permit, demanding that the permit be revoked. UDOT responded that although it could not just revoke the Wilderness permit it would investigate Republic's allegations and would report its findings to Republic within thirty days; UDOT, however, never sent another letter to Republic. Now on appeal, Republic argues that the district court failed to recognize that it had done everything possible to exhaust its administrative remedies to challenge the validity of the Wilderness permit in October 2006 by sending the letter to UDOT demanding that the Wilderness permit be revoked. Republic, however, has not challenged the district court's conclusion that it failed to file a timely administrative appeal within thirty days after it received notice in January 2006 that UDOT had issued the Wilderness permit. Because the district court's conclusion that Republic failed to file a timely administrative appeal amounts to an independent basis for its grant of summary judgment in favor of UDOT and Republic has failed to adequately challenge that conclusion, we decline to consider the alternative basis for the court's ruling. See generally Allen v. Friel, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision.").

C. Exceptions to Exhaustion of Administrative Remedies
¶ 33 Republic claims that its failure to exhaust administrative remedies in this case falls under an exception to the exhaustion requirement and should be excused. Indeed, "the court may relieve a party seeking judicial review of the requirement to exhaust any or all administrative remedies if ... the administrative remedies are inadequate[] or exhaustion of remedies would result in irreparable harm disproportionate to the public benefit derived from requiring exhaustion." Utah Code Ann. § 63G-4-401(2)(b) (2008). However, exceptions to the exhaustion requirement only "exist in unusual circumstances where it appears that there is a likelihood that some oppression or injustice is occurring such that it would be unconscionable not to review the alleged grievance or where it appears that exhaustion would serve no useful purpose." Nebeker v. Utah State Tax Comm'n, 2001 UT 74, ¶ 14, 34 P.3d 180 (internal quotation marks omitted). Further, such exceptions should not conflict with the "purpose underlying the doctrine of exhaustion of administrative remedies ... to allow an administrative agency to perform functions within its special competenceto make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." See Western Water, LLC v. Olds, 2008 UT 18, ¶ 18, 184 P.3d 578 (internal quotation marks omitted).
*631 ¶ 34 Republic argues that it would have been futile to exhaust its administrative remedies because it had no way of knowing that it could intervene in the Lindal permit proceeding and did not at that time know all of the facts supporting its claim that Reagan's Lindal permit was invalid. In so arguing, Republic essentially argues again that it exhausted the available administrative remedies available to it. See supra ¶¶ 19, 21. As we have discussed, however, there were administrative remedies available that Republic did not even essay, much less exhaust. See supra ¶¶ 20-21, 23-24. Republic simply failed to utilize any administrative remedy that would allow it to appropriately raise its challenges to the validity of Reagan's Lindal and Wilderness permits. To allow Republic to proceed directly to the district court under such circumstances would permit it to "leap-frog[] over the entire administrative process" and "circumvent[] ... [UDOT's and the City's] opportunities] to correct any error [they] may have made," see Holladay Towne Ctr., LLC v. Holladay City, 2008 UT App 301, ¶ 8, 192 P.3d 302 (mem.) (internal quotation marks omitted), a problem compounded by the fact that such a result would countenance Republic's attempt to collaterally attack Reagan's billboard permits without appropriate notice and opportunity to be heard. We acknowledge that Republic's claim challenging UDOT's denial of its Deck Hockey permit has always included a challenge to the validity of Reagan's Lindal permit. But if Republic were allowed to circumvent the required administrative remedies so as to avoid a challenge to the validity of the Lindal permit in a proceeding to which Reagan was a party, "[t]he omission of an imposed duty designed to advise the administrative body of [an error that could be corrected] ... [would] accrue to the advantage of the one who failed in the duty. This turns a delict into a triumph." See id. (omission and alterations in original) (internal quotation marks omitted).
¶ 35 Republic further argues that it should not be required to exhaust its administrative remedies because such a requirement would result in oppression or injustice due to the bias or prejudgment of the decision-maker. In support of this argument, Republic asserts that "two different standards are being applied," resulting in preferential treatment of Reagan to Republic's detriment. Republic supports this argument by alleging that "[w]hen Republic applies for... [its Deck Hockey permit], its application is held in abeyance while [UDOT] resolved its issues with Reagan's [Lindal permit]" but when "Reagan applies for ... [its Wilderness permit], Republic's ... appeal ... [of the denial of the Deck Hockey permit is] ignored and Reagan's [Wilderness permit] application is ... approved." Republic also alleges that "UDOT has absolutely no problem resolving... issues [concerning the Lindal permit] with Reagan" without making Republic a party to those proceedings despite Republic's conflicting application for the Deck Hockey permit, "[b]ut, when Republic appeals [the denial of the Deck Hockey permit] to the [d]istrict [c]ourt ... UDOT's primary concern is that Reagan be joined to protect ... [its] interests." Republic attempts to illustrate UDOT's bias with an incident that occurred when it contacted UDOT about the Lindal permit proceedings. According to Republic, "UDOT deliberately misled Republic officials away from pursuing" intervention into the Lindal permit proceeding when UDOT officials told Republic that private negotiations were ongoing between UDOT and Reagan that were basically "a done deal." However, "reliance on statements from UDOT officials ... does not provide a legitimate reason to relieve a party seeking judicial review of the requirement to exhaust any or all administrative remedies." See Intermountain Sports, Inc. v. Department of Transp., 2004 UT App 405, ¶ 19, 103 P.3d 716 (internal quotation marks omitted).
¶ 36 Republic further attempts to demonstrate bias or prejudgment by the decisionmakers at UDOT by alleging, among other things, that the same official who approved Reagan's Lindal permit reviewed Republic's challenge to the validity of the Lindal permit. Such an allegation, however, is insufficient to prove bias or prejudgment of the decision-maker so as to exempt Republic from the requirement that it exhaust its administrative remedies. Even if we were to accept the *632 authority cited by Republic in support of its argument, those cases do not support Republic's position. In particular, one of the cases cited by Republic involves a fact pattern that includes overwhelming evidence of bias or prejudgment of the decision-maker and not simply, as Republic has alleged here, that the same official reviewed both permit applications. See Clisham v. Board of Police Comm'rs, 223 Conn. 354, 613 A.2d 254, 260-63 (1992) (determining that the plaintiff had shown "overwhelming" evidence that a decision-maker was biased); see also Allen, 2008 UT 56, ¶ 9, 194 P.3d 903 (requiring more than "bald citation[] to authority" in support of an appellant's position (internal quotation marks omitted)).
¶ 37 Ultimately, we agree with the district court that "Republic has failed to present sufficient evidence to raise any genuine issue of material fact that would ... demonstrate that any of the exceptions to the exhaustion of remedies requirement applies." Cf. Patterson v. American Fork City, 2003 UT 7, ¶ 20, 67 P.3d 466 (declining to "peruse [the plaintiffs'] lengthy list of allegations in search of specific facts supporting their claims [that exhausting administrative remedies would cause] irreparable harm and [be] futil[e]" because these general allegations "do not support a claim that the entire administrative appeals process is inoperative or unavailable"). Accordingly, Republic is not excepted from exhausting its administrative remedies.

II. De Novo Review
¶ 38 The district court granted summary judgment to UDOT on Republic's appeal of UDOT's denial of the Deck Hockey permit. The basis for the court's decision was the undisputed fact that the proposed location for the Deck Hockey billboard was within 500 feet of the Lindal billboard and, therefore, the Deck Hockey billboard could not be legally permitted in the proposed location. Republic argues that by granting summary judgment, the district court failed to properly conduct a de novo review of UDOT's decision to deny the Deck Hockey billboard. See Utah Code Ann. § 63G-4-402(1)(a) (2008) ("The district courts have jurisdiction to review by trial de novo all final agency actions resulting from informal adjudicative proceedings...."). The substance of Republic's argument, however, is not so much a challenge to the district court's conclusion that UDOT properly denied the Deck Hockey permit because of the Deck Hockey billboard's impermissible proximity to the Lindal billboard. Rather, Republic alleges that the district court incorrectly applied the de novo review standard because it failed to fully consider Republic's position that the Lindal permit was invalid.
¶ 39 Indeed, the district court did not consider Republic's arguments regarding the validity of the Lindal permit. Rather, the district court excluded these arguments from consideration because it had already ruled that it did not have subject matter jurisdiction to consider those issues due to Republic's failure to exhaust its administrative remedies. As a result, the district court's review was limited to the basis for UDOT's denial of the Deck Hockey permit: that the Deck Hockey billboard was impermissibly within 500 feet of another billboard, specifically the Lindal billboard. Because that fact was not in dispute, the district court concluded that UDOT properly denied the Deck Hockey permit and granted summary judgment.
¶ 40 It appears that Republic is arguing that the district court gave impermissible deference to UDOT's decision rather than conducting a new trial, particularly by not considering the facts concerning the validity of the Lindal permit. See generally Archer v. Board of State Lands & Forestry, 907 P.2d 1142, 1144-45 (Utah 1995) ("[R]eview by trial de novo means a new trial with no deference to the administrative proceedings below," thus requiring "the district court[ to]review... informal adjudicative proceedings ... by holding a new trial rather than by reviewing the informal record."). However, the limited scope of the district court's review was based on the limited scope of its jurisdiction. De novo review envisions a new trial, but it does not give the district court the ability to consider issues over which it does not have jurisdiction. Accordingly, we cannot agree with Republic's assertion that the district court erred.

*633 CONCLUSION
¶ 41 We conclude that the district court correctly granted summary judgment because it lacked subject matter jurisdiction to consider Republic's claims to the extent that they challenged the validity of the permits issued for the Lindal billboard and the Wilderness billboard because Republic failed to exhaust its administrative remedies.
¶ 42 Accordingly, we affirm.
¶ 43 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and WILLIAM A. THORNE JR., Judge.
NOTES
[1] In the course of this litigation, the billboards at issue have been referred to by the district court and the parties by certain names that we adopt for purposes of this decision.
[2] Billboards along I-15 in this area require permits from both UDOT and the City.
[3] Republic applied to UDOT for the Deck Hockey permit after receiving a permit from the City in May 2002.
[4] According to the permit application, obtaining a permit to modify a billboard from UDOT is a two-step process: first, the requested modifications are initially approved; second, the approved modifications must be completed then verified and signed off by a permit officer within sixty days of the initial approval. If the approved modifications are not completed and verified within those sixty days, the approval becomes void.

Here, the Lindal billboard was not constructed according to the dimensions originally specified on the permit application that UDOT initially approved; however, the permit application was amended to conform with the Lindal billboard as actually constructed within sixty days of the initial approval. The permit officer who verified that the Lindal billboard was constructed according to the initially-approved permit application testified that the amendments were made before he signed off on the permit and further testified that he could not have allowed any amendments to be made after he had signed off on the permit.
[5] Republic has raised several arguments challenging the validity of the Lindal permit. Republic has alleged that the City permit for the Lindal billboard lapsed before UDOT approved the Lindal permit and that the Swanson billboard was never removed after the Lindal billboard was built. Republic has also alleged that the Lindal billboard was not built on the location or according to the dimensions originally specified on the permit application, as well as that the permit application was altered to reflect the change in dimensions. See supra ¶ 6 n. 4. Specifically concerning the alteration of the permit application to reflect the change in dimensions, Republic argues that the permit application should be considered a forged document because there is no rule or regulation at UDOT that allows amendments or alterations to permit applications. Also due to these alterations to the permit application, Republic has further argued that because there is no rule or regulation at UDOT that allows amendments or alterations to permit applications to be applied retroactively, the Lindal permit application should be considered to be a new application subsequent to the Deck Hockey permit application, thus making the Deck Hockey permit application first in time.
[6] Republic has also raised several other arguments challenging the validity of the Wilderness permit, including allegations that the Wilderness billboard violated height, overhang, and setback ordinances.
[7] Republic also raises several substantive challenges to the validity of the Lindal permit and the Wilderness permits. See supra ¶ 7 n. 5. Having decided that it lacked subject matter jurisdiction, however, the district court never reached these issues, and therefore neither can we. Even if we were to overrule the district court's grant of summary judgment, the appropriate remedy would be to remand the case for consideration of the remaining issues, not to address them on appeal. Thus, regardless of our decision here, the issues are not properly before us, and we do not consider them.
[8] Many of the statutory provisions relied upon herein have been renumbered during the course of this litigation but are substantially unchanged, so as a convenience to the reader we cite to the current version of the code.
[9] As a general matter, Republic's arguments seem to imply that it was not required to seek conversion of the Lindal permit proceeding because the decision of whether to convert a proceeding from informal to formal is within the discretion of the presiding officer and such a request may have been denied. See, e.g., Utah Code Ann. § 63G-4-202(3) (2008) (providing that "the presiding officer may convert ... an informal ... proceeding ... to a formal ... proceeding" (emphasis added)). The requirement that administrative remedies be exhausted, however, is not so easily defeated. If an avenue of administrative relief is available, it cannot be ignored simply because it might ultimately be unsuccessful.
[10] Specifically, Republic argues that before the Lindal permit had been approved, it was only aware that Reagan did not have a permit from the City for the Lindal billboard. Only after the Lindal permit had been approved did Republic discover that the Lindal billboard was not built on the location specified on the permit application, that the Lindal billboard was not constructed according to the dimensions originally specified on the permit application, and that Reagan had not yet removed the Swanson billboard.
[11] Republic argues that it did not have standing to challenge the validity of the Wilderness permits until it applied for the Network permit. Reagan, however, responds that Republic had standing to challenge the validity of the Wilderness permits due to Republic's interest in the Deck Hockey permit. See supra ¶ 9. Reagan supports its argument with Republic's own statements, indicating that it had an interest in the Wilderness permits. For example, in its request to the City for a copy of Reagan's application for the Wilderness permit, Republic stated that the Wilderness billboard "has a direct impact on [the Deck Hockey] permit issued by [the City]." And Republic argued to the district court that because the Deck Hockey billboard and the Wilderness billboard are within 500 feet of each other, "Republic clearly has standing to challenge the issuance of the [City] permit, as well as the UDOT permit" for the Wilderness billboard. The district court agreed with Reagan, stating that "Republic has admitted that its interests in the Deck Hockey [billboard] were adversely affected by ... the [Wilderness] permit[s]" and, thus, the court concluded that "Republic clearly has standing" to challenge the validity of the Wilderness permits.

We agree with the district court that Republic had standing to challenge the validity of the Wilderness permits. Republic was involved in an ongoing appeal of the denial of the Deck Hockey permit, and its interests in the Deck Hockey billboard were in direct conflict with the Wilderness billboard. Thus, not only does Republic's interest in the Wilderness billboard appear to comport with the basic requirements of standing, see generally City of Grantsville v. Redevelopment Agency of Tooele City, 2010 UT 38, ¶ 14, 233 P.3d 461 ("Utah's traditional standing test requires a showing of injury, causation, and redressability.... [To show injury,] the petitioning party must allege that it has suffered or will suffer[] some distinct and palpable injury that gives [it] a personal stake in the outcome of the legal dispute." (second and third alterations in original) (citations and internal quotation marks omitted)), but Republic's own statements confirm that it had a level of interest sufficient to confer standing.
[12] A collateral issue here is the City's denial of Republic's Network permit. Notably, the City's denial of the Network permit was not one of the claims raised before the district court and is not directly a subject of this appeal; rather, Republic uses the City's denial of the Network permit as a vehicle to challenge the validity of the Wilderness permit. Specifically, in arguing that it did not have standing to challenge the validity of the Wilderness permit, Republic asserts that it only obtained standing once it applied for the Network permit with the City. See supra ¶ 25 n. 11. Republic argues that it "aggressively pursued" its appeal of the City's denial of the Network permit and details at length its continued challenge to the validity of the Wilderness permit in its appeal of the denial of the Network permit. However, the district court only addressed Republic's challenge to the denial of the Network permit briefly, stating that "Republic attempted to collaterally attack the [Wilderness permit issued by the City] ... by submitting a new application for [the Network permit] ... but a self-inflicted injury does not confer standing, nor can it extend the time for appeal." Republic has not challenged the district court's determination that its application for the Network permit did not extend the time it had to challenge the validity of the Wilderness permit. See generally Allen v. Friel, 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision."). Accordingly, we do not consider Republic's arguments concerning the Network permit further.